# Lutz v. Van Heynigen Brokerage Company.

### Assumpsit.

(Decided April 26, 1917.  75 South. 284.)

1. **Shipping; Power of Majority Owner of Vessel.**—The majority owner of a vessel has the right to control the vessel's employment and service.

2. **Principal and Agent Contract by Agent.**—If an agent in the execution of a contract discloses his principal, making it appear on the face of the paper that it is the contract of the principal, and sign it as agent, the

[Lutz v. Van Heynigen Brokerage Company.]

principal and not the agent is bound. if the undertaking is within the agency.

3. **Principal and Agent; Contract by Agent; Liability of Agent.**—Where a contract does not disclose on its face a principal, and the only suggestion that the signator is acting in a representative capacity exists in the use, after the signature only, of the words "agent," "trustee," or the like, the contract prima facie imposes personal liability only; the words following the signature being regarded as mere descriptio personae.

4. **Principal and Agent; Liability of Agent.**—Where a contract is, on its face, the obligation of the signator only, such signator may be impleaded for breach of the contract.

5. **Evidence; Parol Evidence; Identification of Parties; Principal and Agents.**—When it is doubtful from the face of a contract, not under seal, whether it was intended to operate as a personal engagement of the party signing, or to impose an obligation upon some third person as his principal, parol evidence is admissible to show the true character of the transaction.

6. **Principal and Agent; Description of Principal.**—Where an agent executes a contract, his principal's identity may be as effectively disclosed by description that actually informs the person with whom he deals of his principal's identity as by giving the principal's name.

7. **Principal and Agent; Liability of Agent for Contract Without Authority.**—One assuming to act as agent is not liable on his implied warranty that he was authorized to contract for his identified principal.

8. **Evidence; Parol Evidence; Liability of Parties; Principal and Agent.** A charter partly describing the parties and asserting the representative character of the agent who signed it, but also containing the words "to the true and faithful performance of all and every of the foregoing agreements, we, the said parties, do hereby bind ourselves, our heirs, executors, administrator, and assigns, each to the other, in the penal sum of the estimated amount of freight," and signed by the agent as agent and not in the name of the ostensible principals, raised such doubt as to whether it imported obligations assumed by the agent individually that parol evidence was admissible to discover the true intent of the parties.

9. **Evidence; Parol Evidence; Identification of Parties.**—In action by charterer of vessel on the charter party against one who defended on the ground that he signed merely as agent for the true owner, evidence was admissible as to the circumstances surrounding the parties to the engagement, including the fact that defendant had an interest in the vessel, and of a previous similar contract of charter for the vessel, together with the instrument itself, and of the acts of the parties with respect to the recognition and observance of the obligations thereof.

10. **Customs and Usages; Evidence as to Custom in Chartering Vessels.**—In such action evidence of a universal, general custom in respect of the general acceptance in the trade of a particular intent imported by similar equivocal provisions of charter contracts was justified to the end that the uncertainty might be removed and the true intent of the parties discovered.

11. **Contracts; Parol Evidence; Question for Jury.**—While it is the province of the court to construe written contracts, where the meaning is to be collected from the writing without the aid of evidence aliunde, yet where the meaning, the intent of the parties, depends upon the ascertainment of facts aliunde the instrument, this admixture of written with parol evidence requires the submission of the issue to the jury.

[Lutz v. Van Heynigen Brokerage Company.]

**12. Principal and Agent; Liability of Agent on Contract; Question for Jury.**—A charter party being ambiguous as to whether a signator was bound as principal or agent, the question whether the parties contemplated that the signator individually should assume obligations under the instrument was for the jury.

**13. Principal and Agent; Action; Pleading.**—In action on charter party against one defending on the ground that he signed only as agent, plea held to be defective in failing to aver that plaintiff knew at the time that defendant's agency was limited as claimed, etc.

APPEAL from Mobile Law and Equity Court.

Heard before Hon. SAFFOLD BERNEY.

Assumpsit by E. Lutz against the Van Heynigen Brokerage Company, a corporation. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

The facts and the cause of action are sufficiently stated in the opinion. Count 4 alleges that plaintiff did rely upon said representation and warranty, did make and enter into said charter party purporting to bind the owners of the schooner Goldfield. Plaintiff avers said defendant was without authority from said owners, and that the action of defendant in executing said charter party purporting to bind said owners of the steamer was wholly unwarranted by and without authority from said owner. And plaintiff avers that by reason of said representation and warranty of said defendant as aforesaid, being untrue as aforesaid, said defendant has breached his said warranty with said plaintiff as aforesaid. Count 7 is as follows:

Defendant, acting by and through John A. Merritt & Co., its duly authorized agent, executed with plaintiff a charter party, a copy of which is attached, marked Exhibit A, hereby referred to and made a part hereof. Defendant was not at the time of making said charter party the agent of or authorized to represent the owners of the majority interest in said steamer Goldfield. After the execution of said charter party, said schooner Goldfield proceeded to the port of Mobile, and was there docked. Thereafter, and on, to-wit, February 20, 1915, the schooner left the said dock at the port of Mobile, and plaintiff thereupon demanded of defendant that said schooner enter upon the performance of said charter party according to its terms, but defendant failed to comply with said demand, and the owners of said schooner repudiated the contract, embraced in said charter party, and denied defendant's authority to bind them thereby, and refused to permit said schooner Goldfield to perform the said charter.

The price named in said charter party for the use of said vessel was a fair and reasonable value of such use at the time said charter party was entered into, but thereafterwards ocean freights of all kinds advanced rapidly, and at the time of aforesaid default and failure in complying with said charter party ocean freight had greatly advanced, and the loss and damage to plaintiff by reason of being deprived of the use of said vessel. under the terms of said charter party amounted to a large sum, to-wit, $15,000. Wherefore plaintiff sues.

Plea A is as follows:

One Erb owned forty-seven sixty-fourths interest in said schooner and died intestate, a short time before the charter party referred to in said count was entered into, and no person had qualified as executor or administrator of the estate of said Erb. After the death of said Erb, his widow claimed the right, by virtue of being such widow, to manage and control her said.deceased husband's interest in said schooner, and to employ or join in the employment of said schooner to the same extent that her husband would have been authorized to employ, or join in the employment of said schooner had he still lived; and the estate of said Erb, deceased, employed and authorized. defendant as their agent or broker to obtain employment for said schooner, and to engage, make, and enter into an agreement therefor upon the terms set out in the charter party referred to in said count; and defendant under said employment and authority, and no other, and as broker or agent of said parties, and for and on their behalf and not for and on its own behalf, made and entered into the contract or charter party referred to in said count. At and before the time of the execution of said charter party, plaintiff knew that said Eerb was dead, and that at the time of his death he owned a large interest in the schooner, and that his widow claimed the right by virtue of being such widow, to manage and control the employment of said schooner to the same extent that said Erb had the right to manage and control it during his lifetime, and the plaintiff knew that defendant in negotiating and agreeing to the terms of said contract was negotiating and agreeing thereto by authority from and on behalf of said widow and the owners of said schooner other than the estate of said Erb, and not for and on behalf of itself, and knew its only authority for such negotiating and agreement was derived from said widow and owners, and with said knowledge plaintiff entered into said

[Lutz v. Van Heynigen Brokerage Company.]

agreement and executed said contract as an agreement or contract between itself and the owners of said schooner, treating said Mrs. Erb as one of such owners, and not as an agreement with defendant.

STEVENS, McCORVEY & McLEOD and D. B. GOODE for appellant.   GREGORY L. SMITH & SON for appellee.

McCLELLAN, J.—The appellant and the appellee were the . respective parties plaintiff and defendant in the court below. The verdict and judgment for the defendant was immediately consequent upon the action of the court in giving the general affirmative charge for the defendant at its request.

The plaintiff (appellant) would fix liability on the defendant (appellee) in consequence of a charter party for the schooner Goldfield executed, as will later appear, to the plaintiff as charterer.   The first three counts of the complaint proceed on the theory that the defendant bound itself by the contract or charter—was the obligor therein—and are, hence, counts *on the contract*.   The fourth count declares on the breach of a warranty by the defendant, in that, contrary to the defendant's assumption, the defendant was not authorized as agent of the owners of the vessel to engage as, through the charter party of November 2, 1914, it purported to do *for* the owners of the vessel.

(1-5) On and prior to the 18th of October, 1914, the schooner Goldfield was owned by the following tenants in common, in the respective proportions noted just after their names:   Captain Erb, forty-seven sixty-fourths; Van Henigen Brokerage Company, five sixty-fourths; E. K. Ladd, two sixty-fourths:   George Dunlap, one sixty-fourth; Wrightson, five sixty-fourths; Rolf, etc,. Chandlery, three sixty-fourths; and Martin, one sixty-fourth. The plaintiff was a lumber merchant, and to serve his trade he chartered vessels to carry lumber to various ports.   His authorized agent, Diaz, represented him in negotiating and executing the charter of November 2, 1914, of the schooner Goldfield.   The appellee was a ship broker at Mobile.   To state an unescapable conclusion of fact and law, John A. Merritt & Co., of Pensacola, also engaged in that character of brokerage, represented the appellee in the negotiation and execution of the charter party in question.   Captain Erb, who owned, as appears, a controlling interest in the schooner, died on October 18, 1914, leaving a

widow and three minor children. Some months after the execution of the charter party and an addenda made thereto by an agreement of the appellee and appellant, the fact was recognized that the charter party, executed after Captain Erb's death, was ineffectual to bind the vessel, Erb's estate having the controlling interest therein. The vessel was, hence, not made available to the charterer. The right to control the vessel's employment and service was in Captain Erb up to his death, and that seems to have been the recognized practice.—*The Orleans v. Phoebus*, 11 Peters (U. S.) 175, 183, 9 L. Ed. 677; 36 Cyc. pp. 31, 32. The effort of the widow of Erb to authorize the appellee to create obligations through the charter of the vessel to the appellant was vain, wholly ineffectual. If an agent in the execution of a contract "disclose his principal, make it appear on the face of the paper that it is the contract of the principal, and sign it as agent, of course the principal is bound, the undertaking being within the agency, and the agent is not. On the other hand, if a principal is not disclosed on the face of the paper, and the party signing describes himself as agent, trustee, or the like, *without more* (italics supplied), it is the obligation alone of the party whose name is set to the paper, the superadded word or words being mere descriptio personæ to be disregarded as surplusage, and evidence cannot be received to show that he was, in fact, the agent or trustee or the like of an undisclosed principal, * * * and the obligation was that of such other person. And again, if the paper discloses the names of two parties, either of whom may be the obligor, and it is doubtful from the whole instrument which of the two is intended to be bound, and the signer describes himself as agent, * * * parol evidence is admissible to show that it is the obligation of the party named in but not signing the paper."—*Richmond Machine Works v. Moragne*, 119 Ala. 80, 24 South. 834, and cases therein cited; *Roney v. Winter*, 37 Ala. 277. Where the only suggestion that the signator is acting in a representative capacity exists in the use, after the signature only, of the words "agent," "trustee," or the like, the contract is regarded, prima facie, as imposing a personal liability on the signator alone, and the words stated, following the signature, are regarded as descriptio personæ only.— *Richmond Machine Works v. Moragne, supra; Briel v. Bank,* 172 Ala. 475, 55 South. 808. Of course, in such circumstances the other party may implead the signator for a breach of the con-

tract; the contract, under such circumtances, being on its face the obligation of the signator only.—*Lazarus v. Shearer*, 2 Ala. 718, 726. "When it is doubtful from the face of a contract, not under seal, whether it was intended to operate as a personal engagement of the party signing, or to impose an obligation upon some third person as his principal, parol evidence is admissible to show the true character of the transaction."—*May v. Hewitt*, 33 Ala. 161, 166. "If the name of the principal appears in the instrument, and it is evident from the writing, as a whole, that the *intention* was that the principal, and not the agent, was the person to be bound, the principal alone will be bound, if the agent had authority to make the agreement" (italics supplied). —*Roney v. Winter, supra.*

(6) We do not understand the text in 2 C. J. pp. 819-821, to affirm anything to the contrary on this particular point, viz. that the principal's identity may be as effectively disclosed by description that actually informs the person with whom he deals of his principal's identity as by giving the individual names of those having a joint interest. It was very well said in *Waddell v. Mordecai*, 3 Hill (S. C.) 22, that it could not be perceived wherein the necessity lay "of the agent naming, specifically and severally, every one of a class or company of his principals, who are usually designated among men of business by some descriptive terms." The Massachusetts Court, in *Lyons v. Williams*, 71 Mass. (5 Gray) 557, said on this point: "But it is said that the names of these corporations are not stated. This is true; but they are capable of being made certain by proper inquiry, and the plaintiff was content to take a contract thus generally designating the parties with whom the liability was to rest for the safe and proper conveyance of the goods."

The Michigan Court, in *Mercer v. Leihy*, 139 Mich. 447, 454, 102 N. W. 982, 974, pertinently observed: "We are of the opinion that the statement, frequently found, that the agent, to avoid personal liability, must disclose the *name* of his principal, is due to the fact that such is, in the nature of things, the natural and ordinary, and many times the only convenient and practicable, way of identifying him. The important information to be given to the purchaser is that the auctioneer is an agent, acting for a principal whom he discloses, and it would seem that the accurate giving of his principal's name is not indispensable where other means of clearly pointing out and identifying him are adopted."

We think the doctrine is sound which permits and gives appropriate effect to the disclosure of the identity of the principal by description as well as by name, as where the agent makes a contract for the owners of a named vessel.—1 Mechem, § 1412; *Waddell v. Mordecai, supra; Lyon v. Williams, supra.* The court in *Ye Seng Co. v. Corbitt* (D. C.) 9 Fed. 423, 426, 141 C. C. A. 337—a case approvingly cited in *Swayne & Hoyt v. Barsch,* 226 Fed. 584—entertained a different conclusion; a conclusion that seems to have been attained on the erroneous notion that there was no authority for the view that has been stated.

(7) In *Ware v. Morgan,* 67 Ala. 461, 468, this court said: "An agent having in fact no authority, and yet assuming to bind his principal, incurs a personal liability. If, with knowledge of the want of authority, he represents himself as leaving [having] it to one ignorant of the facts, and dealing on the faith of the representation, he is guilty of deliberate fraud, and of his liability for the resulting injury there is no doubt. And if not having authority, yet with an honest belief that he has it, he deals with another, he is liable for the resulting injury. The difference in the two classes of cases is in the degree of moral wrong only, and not in the degree of injury to the other contracting party relying on his representation. The true principle on which the liability of an agent for an authorized [unauthorized] contract rests is that he has been guilty of a wrong, or omission, depriving the party dealing with him of the benefit of the liability of the principal for which he contracts.—*Smoot v. Ilbery,* 10 Mees. & Wels. 1. When he is guilty of no wrong or omission, when there is a full and honest disclosure of the nature and extent of his authority, when the party dealing with him has all the knowledge and information which the agent possesses, there is no liability resting on him, though his act or contract proves to be ultra vires.— *Jefts v. York,* 10 Cush. [Mass.] 392; *Newman v. Sylvester,* 42 Ind. 106."

This decision, as appears, was founded in the main upon *Jefts v. York,* and *Newman v. Sylvester,* which was, in its turn, based upon *Jefts v. York;* and *Jefts v. York* was rested, in this respect, by Chief Justice SHAW on *Smoot v. Ilbery.* The manifest effect of our decision in *Ware v. Morgan,* following the other cases, was to exclude the recognition of the remedy by an action against the psuedo agent on his implied warranty that he was authorized to contract for his identified principal. In *Jefts v.*

[Lutz v. Van Heynigen Brokerage Company.]

*York* it seems to have been in the mind of the court that where the agent tacitly represents himself as being authorized to engage for another, when in fact he is not so authorized, his fault is in the nature of a false warranty; but, notwithstanding this statement, it was held that the party's remedy is by an action in tort. There are respectable authorities for the view, pronounced in more recent times, that recognizes the right of the contracting party, who has been disappointed by the failure of the ostensible agent to possess authority to bind his ostensible principal, to sue the ostensible agent for a breach of his implied warranty of authority to engage for his disclosed principal.—1 Mechem, § 1398; *LeRoy v. Jacobsky,* 136 N. C. 443, 48 S. E. 796, 67 L. R. A. 977; 31 Cyc. pp. 1545-1547; *Patterson v. Lippincott,* 47 N. J. Law, 457, 1 Atl. 506, 54 Am. Rep. 178; *Seeberger v. McCormick,* 178 Ill. 404, 416-419, 53 S. E. 340; *Oliver v. Morawetz,* 97 Wis. 332, 72 N. W. 877, among others. Mechem points out that the Massachusetts court, from which we have *Long v. Colburn,* 11 Mass. 97, 6 Am. Dec. 160, and *Ballou v. Talbot,* 16 Mass. 461, 8 Am. Dec. 146—both noted by this court in *Roney v. Winter, supra*—has more recently manifested a disposition to recognize the propriety of the remedy through an action against the agent for a breach of his implied warranty, citing *Railroad Co. v. Richardson,* 135 Mass. 473. This court, in *Lazarus v. Shearer,* took account of the argument pressing the proposition in that case and said, in effect, that if the facts warranted the contention the argument would be entitled to great consideration. While appreciating the impressive support that the contrary view has in texts and decisions in this country, we do not feel justified at this late day in altering the very clear doctrine set forth, as quoted, in our case of *Ware v. Morgan.* The soundness of its doctrine was recognized in *Schloss v. McIntyre,* 147 Ala. 557, 41 South. 11. It results from an application of the doctrine of *Ware v. Morgan* that the court did not err to plaintiff's prejudice in striking count 4.

(8-11) On the face of the charter party two parties are named; one, an aggregation of persons having joint interests in the subject-matter, being efficiently described. The instrument does not fall within the class of cases where the *only* reference to agency is afforded by the use of the words "agent," "trustee," or the like, "without more," after the signature of the paper.— *Moragne's Case, supra.* The instrument in its first part, describ-

[Lutz v. Van Heynigen Brokerage Company.]

ing the parties thereto, asserts the representative character of the appellee, and in its concluding paragraph expresses an unequivocal obligation on the part of the "vessel and owners" to Merritt & Co. for commissions on the "gross amount of this charter and demurrage," regardless of whether the vessel was "lost or not lost, charter canceled or uncanceled." The instrument also contains these provisions: "To the true and faithful performance of all and every of the foregoing agreements, we, the said parties, do hereby bind ourselves, our heirs, executors, administrators and assigns, each to the other, in the penal sum of the estimated amount of freight."

Whether, in view of the signature of the instrument, by the otherwise ostensible agent, in the name of the agent and not in the name of the ostensible principal, the last-quoted provisions of the charter import obligations assumed by the appellee individually, is doubtful; and parol evidence was admissible to discover the true intent of the parties. The court's action in admitting evidence of the circumstances surrounding the parties to this engagement, including the fact that the defendant had an interest in the vessel, of a previous similar contract of charter of this vessel, together with the instrument itself and of the acts of the parties with respect to the recognition and observance of the obligations thereof, and evidence of a universal, general custom in respect of the general acceptance in the trade of a particular intent imported by such equivocal provisions of charter contracts, was justified, to the end that the mentioned uncertainty might be removed, and the true intent of the parties discovered: —Moragne's Case, supra; 9 Ency. of Evi. pp. 370-382, 405-409; M. & E. Ry. Co. v. Kolb, 73 Ala. 396, 401, 402, 49 Am. Rep. 54; Metcalf v. Williams, 104 U. S. 93, 98, 99, 26 L. Ed. 665. While it is the province of the court to construe written contracts, where the meaning is to be collected from the writing without the aid of evidence aliunde, yet where the meaning, the intent of the parties, depends upon the ascertainment of facts aliunde the instrument, this "admixture of parol with written evidence draws the whole to the jury," requires the submission of the issue to, the deduction of the inference of fact by, the jury.—Sewall v. Henry, 9 Ala. 24, 31; Holman v. Crane, 16 Ala. 570, 580; Boykin v. Bank, 72 Ala. 262, 269, 47 Am. Rep. 408.

(12) The plaintiff's case, under the first three counts, depended upon the establishment of the defendant's direct, individ-

[Lutz v. Van Heynigen Brokerage Company.]

ual relation of an obligor to the contract. In giving the general affirmative charge for the defendant the court took from the jury the decision of the issue indicated. It was, under the evidence, for the jury to decide whether the parties (not one of them only) contemplated and intended that the defendant individually should assume obligations under the instrument; whether the common intent was that the defendant should add its personal assurance of a faithful performance of the contract. It was the office of the parol evidence to remove the doubt, and it was the. jury's function to decide the issue.

(13) The seventh count of the amended complaint proceeds on the theory that the defendant undertook, as agent, to effect, the charter party in question without having at the time authority from the owners of a majority of the interests in the vessel to contract for the charter thereof. The demurrer to this count was overruled. Separately to this count, as well as to those counts which declare upon a contract made by the defendant as obligor, the defendant filed plea A. The report of the appeal will contain this plea. It would seem to be clear that the pith of the plea presented no defense to the counts *on the contract*, though it does contain an averment contradictory of the allegation in these counts that the defendant was an immediate obligor therein. As referred to the seventh count, the plea possessed these faults: In its failure to aver that the plaintiff knew, at the time, that the defendant's agency was limited to representing only those joint owners who held, in the aggregate, less than a majority of the interests in the vessel, or that the estate of Erb held the controlling interest therein, or that the widow of Erb was the sole next of kin and distributee of the deceased. On the facts averred it could not be said that the plaintiff's contracting can be attributed to his own mistaken judgment with respect to the defendant's authority.—*Ware v. Morgan, supra.*

It appears from the evidence that the inquiry of fact, whether the plaintiff was so fully advised or knew of the status of the ownership of this vessel existing at the time this contract was made as to warrant the conclusion that he (plaintiff) engaged with defendant in a representative capacity in reliance upon the plaintiff's own judgment of the defendant's authority, was a matter of inference and deduction which it was necessary to submit to the jury.

[Louisville & Nashville Railroad Co., et al. v. Lynne.]

The judgment is reversed, and the cause is remanded. Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.