50 So.2d 788

DRAUGHON'S BUSINESS COLLEGE et al.
v. BATTLES.

7 Div. 125.

Court of Appeals of Alabama.
Feb. 20, 1951.

588

Frank M. James, of Birmingham, for appellants.

Hawkins & Copeland, of Gadsden, for appellee.

CARR, Presiding Judge.

This is a suit brought by J. M. Battles against Draughon's Business College, a corporation, and J. M. Braziel.

One count of the complaint seeks to recover damages for alleged fraud. The other count claims damages for a breach of contract.

The general affirmative charges were requested by the defendants as to each count of the complaint. These were refused.

The jury returned a general verdict in favor of the plaintiff.

In this state of the record the general verdict will not be referred to a good count of the complaint which finds support in the evidence. That is to say, if the general affirmative charge was improperly refused to either count a reversal of the judgment below must follow. Jones v. State, 236 Ala. 30, 182 So. 404; Ross v. Washington, 233 Ala. 292, 171 So. 893; Jackson v. State, 33 Ala.App. 42, 31 So.2d 514; Moore v. State, Ala.App., 44 So.2d 789.

We will devote our review to a consideration of the contract count of the complaint.

J. M. Braziel was the authorized agent of Draughon's Business College. He sold Mr. Battles, the appellee, a "Lifetime Service Certificate" which was issued to the latter's daughter, Kathryn Battles. The price was $335, which amount was paid in full at the time of the purchase. The first paragraph of this instrument is: "For Value Received, this Certificate is issued to Kathryn Jne (sic) Battles of E. C. H. S. high school, Attalla, Ala., and is good for a College Business Adm. course, No. 76, including the auxiliary branches, instruction in said course to be given in Draughon's Business College, to the holder of this Certificate during a term of life, subject to circumstances beyond control of said College. The holder thereof may puruse (sic) the above course as long as it is necessary to finish the required subjects."

This transaction transpired on the 30th day of August 1949. On the same day and as a part of the overall agreement, Mr. Battles signed this paper:

"Gentlemen:—

"It is understood that you agree to sercure (sic) for me with 2 wks after I enter your college a bona fide place to earn my room and board. This is to be in a respectable place and the hours are not to be unreasonable.

"Or, failing to secure such a place for me within 2 wks after I have entered college, you are to pay my room and board at a respectable place selected by you until you do secure such a place for me.

"While I understand that you place many students in a short time after entrance, and that you will do your best to place me immediately, yet you are not under any

obligation to do so under 2 wks, and that the provisions above cover your entire obligation to me in this respect. If for any reason I lose my first place, I understand that you will assist me in finding another place where I may earn my room and board, but that you will not be responsible for my room and board in the meantime.

"My Name ———————        Address ——————,
"Parents (Signed) J. M. Battles    Address —————"

The provisions contained in the instrument just supra were in harmony with a verbal understanding between Mr. Battles and Mr. Braziel. There is some conflict in the evidence in respect to the nature and character of the employment that would be secured. The appellee testified that it was promised that his daughter would be given secretarial work or part time employment in a department store. Mr. Braziel testified that he did not make a definite promise to this effect.

The contract count of the complaint is based on an alleged breach of the indicated agreement. In part the count alleges: "* * * Draughon's Business College, promised to and agreed with plaintiff, that in consideration of the plaintiff purchasing such certificate and paying therefor the sum of $335.00, defendants would furnish to plaintiff's said daughter said course of instruction in defendants college, and further that during the time plaintiff's said daughter was enrolled in said course, defendants would furnish to her part-time employment, which said employment would pay sufficient salary or wages to pay her living expenses, and that plaintiff has complied with the terms of said agreement on his part by purchasing said certificate and paying therefore (sic) the sum of $335.00, but that defendant has failed to comply therewith in this, to-wit; that defendant has failed to furnish plaintiff's said daughter with part-time employment which would pay sufficient salary or wages to pay her living expenses, though requested to do so, while plaintiff's said daughter was enrolled in said college, to plaintiff's full damage as aforesaid, hence this suit."

On Monday, September 12, 1949, Kathryn went to Birmingham, Alabama, and enrolled in the business college. The manager, Mr. Foster, forthwith secured employment for her at the home of an invalid lady, Mrs. Downs.

According to the young lady's testimony her college hours, from 8 A.M. to 3 P.M. o'clock, were not interrupted by her work in the home. She was expected, however, to be at her job when she was not at school, and her duties incident to her employment were many, consisting of cooking, housework, and attending the personal needs of the invalid lady. She pursued this plan and continued under this arrangement until the following Friday, at which time she returned to her home in Etowah County.

It is not made to appear with certainty when the decision was made that Kathryn would discontinue her college course.

In any event, on Monday just after the week end she returned with her father to Birmingham for the purpose of getting her clothes and other personal possessions.

While in Birmingham Mr. Battles talked to Mr. Foster. With reference to this conversation the former testified:

"Q. All right, when you went back and talked to them on Monday, who did you talk to? A. Mr. Foster.

"Q. What was said between you and he with regard to those representations and as to your daughter coming home. A. He offered to move her to another place, but it was another home just like that to work like that with no pay there too, she worked for her board, that was all.

"Q. Did you protest to him the fact that those representations hadn't been complied with? A. Yes, sir.

"Q. Did you request a refund of your money— A. Yes, sir.

"Q. At that time? A. Yes sir.

"Q. Did you receive any refund? A. No, sir.

"Q. Have you received any money at all from the Draughon Business College, or their agents? A. No, sir.

"Q. As a refund on this certificate? A. No, sir.

"Q. Have you talked to the Defendants or their agents at any time since that Monday when you talked to him after your daughter had gone home? A. No, sir."

Mr. Foster testified that this occurred: "Well, he came in and said they were not satisfied with Kathry's (sic) place to stay and I told him all right, we would be glad to change her and he wanted to know what I had and I told him I had some more homes and he said no, they didn't want that, I said, well, all right, I will get her something else, and he says, no, I think I will just take her home and so I started trying to persuade him to leave the girl in school and in fact, before it was over I wound up telling him we would get her any kind of job she wanted if he would just leave her in school, and he said, no, he would take her home."

We are here faced with the task of deciding whether or not the evidence will support the essential element of a breach of the contract by the appellant.

■ It is evincingly clear from the evidence that the appellant had another week in which to secure work for the young lady. It it true, of course, that if there was an anticipatory breach of the contract the appellee had a right to treat the agreement at an end so far as further performance was concerned and to maintain an action at once for the damages occasioned by such breach. To amount to a renunciation, however, the evidence must show words or acts evincing an intention to refuse performance within the future time allowed by the contract.

In the case of McAllister-Coman Co. v. Matthews et al., 167 Ala. 361, 52 So. 416, 417, the Supreme Court held: "Merely because a given act or course of conduct of one party to a contract is inconsistent with the contract is not sufficient; it must be inconsistent with the intention to be longer bound by it."

To like effect is the holding in Box v. Metropolitan Life Ins. Co., 232 Ala. 447, 168 So. 220.

■ "Repudiation, among other things, means rejection, disclaimer, renunciation, or even abondonment." In re S. M. Goldberg Enterprises, Inc., 130 Misc. 887, 225 N.Y.S. 513, 516.

Some authorities state that the repudiation by one party "must at least amount to an unqualified refusal, or declaration of inability, substantially to perform according to the terms of his obligation." Mobley v. New York Life Ins. Co., 295 U.S. 632, 55 S.Ct. 876, 878, 99 A.L.R. 1166.

See also, Roehm v. Horst, 178 U.S. 1, 20 S.Ct. 780, 44 L.Ed. 953; Smoot v. U. S., 15 Wall. 36, 21 L.Ed. 107; Dingley v. Oler, 117 U.S. 490, 6 S.Ct. 850, 29 L.Ed. 984; Kimel v. Missouri State L. Ins. Co., 10 Cir., 71 F.2d 921.

Appellee's attorney points out in brief that Mr. Battles testified that Mr. Foster told him that "He didn't guarantee a job at all, that he didn't do that."

Granting this was said, the assertion, when taken in connection with all the circumstances relating to the employment, cannot be taken as an unqualified refusal to make further effort to find employment for the young lady.

Assuming, but not deciding, that the duties incident to the engagement in Mrs. Downs' home created a situation that was contrary to a fulfillment of the agreement on the part of the appellant, we are still faced with the fact that there was time left for compliance.

■ We fail to find that the evidence is sufficiently efficacious to justify a conclusion that the appellee established a breach of the agreement in accordance with the allegations contained in the contract count of the complaint.

On this account the affirmative charge directed at this count should have been given.

The judgment below is ordered reversed and the cause remanded.

Reversed and remanded.