This case involves an action for breach of an alleged five-year employment contract. The jury returned a verdict in favor of the plaintiff, Dr. Gerald Lin, and against the defendants, Sheridan W. Shirley, M.D., and "Sheridan W. Shirley, M.D., P.A." (hereinafter "the P.A."), the professional association through which Dr. Shirley practiced medicine. The jury awarded damages in the amounts of $25,000 against Dr. Shirley individually and $25,000 against the P.A. Dr. Shirley and the P.A. filed motions for J.N.O.V. and new trial, which were denied. They appealed and Dr. Lin cross-appealed.
The facts of this case are briefly summarized below. Defendant Dr. Shirley is a solo practitioner, specializing in urology. He is the sole stockholder and president of the P.A. The record indicates that Dr. Shirley, contemplating retirement, communicated with Dr. Lin, also a specialist in urology, about coming to work at the P.A. and eventually taking over his practice. Subsequent negotiations culminated with a letter prepared by Dr. Shirley on November 7, 1984, and signed by Dr. Shirley and by Dr. Lin. Dr. Lin began working with Dr. Shirley on December 3, 1984, and their relationship ended on December 1, 1985, after a disagreement concerning their respective rights and obligations under the employment agreement.
The issues presented by the defendants, Dr. Shirley and the P.A., are as follows: I.) whether the trial court erred in holding, as a matter of law, that the writing at issue constituted an enforceable employment contract for a definite term of five years; II.) whether the evidence is sufficient to sustain the jury's finding that Dr. Shirley individually was a party to the employment contract; and III.) whether the evidence is sufficient to sustain the jury's finding that the defendants, rather than Dr. Lin, repudiated the contract. Dr. Lin raises the fourth issue in this case: IV.) whether the trial court erred in its instructions to the jury concerning the measure of damages.
I. We first consider the defendants' assertion that the trial court erred in holding as a matter of law that the letter of November 7, 1984, constituted an enforceable employment contract for a definite term of five years.[1] The defendants maintain that *Page 1331 
the duration of the contract was intended to be indefinite and that the relationship was intended to be terminable at will. The portion of the contract relating to the duration of Dr. Lin's employment provides as follows:
 "In accordance with our various correspondences and conversations, we agree to the following:
 1. For the first year, you [Dr. Lin] will receive a salary in the amount of $70,000.00. The second year's salary will be $90,000.00 from which will be deducted $10,000.00 to fund your equity purchase of the P.A. The net salary, of course, will be $80,000.00.
". . . .
 "At the beginning of the third year of your employment, the ratios of ownership will be as follows:
Third year: Dr. Shirley 60%, Dr. Lin 40 %
Fourth year: Dr. Shirley 55%, Dr. Lin 45% *Page 1332 
Fifth year: Dr. Shirley 50%, Dr. Lin 50%"
(Emphasis added.)
The rule is well settled that if a contract does not specify a duration of employment, it is considered terminable at will and may be terminated by either party for any cause or for no cause. Hickenbottom v. Preferred Risk Mutual Ins. Co.,514 So.2d 881, 882 (Ala. 1987); Selby v. Quartrol Corp.,514 So.2d 1294, 1295 (Ala. 1987); Smith v. Reynolds Metals Co.,497 So.2d 93, 95 (Ala. 1986). However, contracts of employment that do specify a definite period terminate by their own terms at the end of such period and may not be terminated at the will of either party. See Northrop v. Kirby, 454 F. Supp. 698, 701
(N.D.Ala. 1978).
This Court also recognizes the general rule that " '[i]t is the province of the court, not the jury, after due consideration of the whole [contract] to determine if uncertainty and ambiguity exist in its terms.' " Hill Air ofGadsden, Inc. v. City of Gadsden, 467 So.2d 230, 232 (Ala. 1985) (quoting Aetna Life Ins. Co. v. Hare, 47 Ala. App. 478,486, 256 So.2d 904, 911 (1972) (emphasis omitted)). See also P S Business, Inc. v. South Central Bell Telephone Co.,466 So.2d 928, 931 (Ala. 1985). The mere fact that the parties assert opposing interpretations of a particular provision does not of itself establish an ambiguity. Upton v. MississippiValley Title Ins. Co., 469 So.2d 548, 554 (Ala. 1985). Furthermore, this Court will not strain to interpret a contract provision that is free from ambiguity, nor will we insert ambiguities into an otherwise unambiguous provision by twisting its construction. ERA Commander Realty, Inc. v. Harrigan,514 So.2d 1329, 1334 (Ala. 1987); P S Business, supra, at 931.
The trial court in the present case determined as a matter of law that the provisions of the contract concerning the length or duration of Dr. Lin's employment were unambiguous and clearly stated a term of employment of five years. In light of the clear wording of the contract, we find no error with this determination.
The defendants also assert that the ambiguous nature of the contract terms concerning Dr. Lin's salary for the third, fourth, and fifth years of his employment and the price Dr. Lin was to pay for his equity in the P.A., make the contract too vague and indefinite to enforce. We disagree.
The essential elements of a contract are as follows: an agreement, consideration, two or more contracting parties, a legal object, and capacity. See Freeman v. First State Bank ofAlbertville, 401 So.2d 11, 13 (Ala. 1981); and Curacare, Inc.v. Pollack, 501 So.2d 470, 471 (Ala.Civ.App. 1986), cert.quashed, 501 So.2d 472 (Ala. 1986). These elements are present in this case.
To the extent that the terms of a contract are ambiguous, as a general rule such terms are nevertheless considered sufficiently certain if they are capable of being rendered certain or have been rendered certain by the performance of the parties under the contract. See 56 C.J.S. Master and Servant, § 6(c), at 68-69 (1948). The meaning of such terms is a question of fact for the jury, to be decided by the surrounding facts and circumstances. Hall v. Integon Life Ins. Co.,454 So.2d 1338, 1342 (Ala. 1984); Medical Clinic Board of the City ofBirmingham-Crestwood v. Smelley, 408 So.2d 1203, 1206 (Ala. 1981).
In the present case, the contract provided for Dr. Lin to receive $70,000.00 his first year, and $90,000.00 his second year, less $10,000.00 to fund his equity purchase of the P.A.. Whether Dr. Lin's salary was to continue to be $90,000.00 for the remaining three years and whether $10,000.00 was to be deducted each of the next three years to fund his equity purchase are questions that the trial court properly sent to the jury. While ambiguous, these terms are such that their meaning can be ascertained from the surrounding circumstances, and they do not render the contract unenforceable. Thus, we find no error with the trial court's finding as a matter of law that the contract was enforceable and specified a definite term of employment of five years. *Page 1333 
II. Dr. Shirley further asserts that the evidence is insufficient to sustain the jury's finding that he, individually, was a party to the employment contract. Dr. Shirley argues that he was merely the agent of the P.A. and cannot be held personally liable for breach of the employment contract.
The general rule in Alabama concerning the liability of an agent for the breach of a contract entered on behalf of a disclosed principal is that the agent binds either the principal or himself to the contract, but not both. SeeMobile Ins., Inc. v. Smith, 441 So.2d 894, 897 (Ala. 1983); andGillis v. White, 214 Ala. 22, 22, 106 So. 166, 167 (1925). If the agent fails, for lack of authority, to bind the principal, then he is personally liable on the contract. Gillis,214 Ala. at 22, 106 So. at 167. If the agent succeeds in binding the principal, then he will not be held personally liable unless there is clear evidence that he intended to substitute or superadd his personal liability for or to that of the principal. See Mobile Ins., 441 So.2d at 897; and Sealy v.McElroy, 288 Ala. 93, 104, 257 So.2d 340, 350 (1972)). Where the evidence is conflicting as to whether the agent intended to give his personal guarantee of performance on the contract, the question is one for the jury to decide. B M Homes, Inc. v.Hogan, 376 So.2d 667, 676 (Ala. 1979); Lutz v. Van HeynigenBrokerage Co., 199 Ala. 620, 630, 75 So. 284, 288 (1917).
The evidence in the present case concerning whether the parties intended that Dr. Shirley be personally liable on the contract is disputed. The record shows that the name and address of the P.A. were printed across the top of the contract; however, the record also shows that, rather than signing the contract as the agent of the P.A., Dr. Shirley signed the contract in his own name. This Court has recognized that the fact that an agent signs a contract in his own name can, in and of itself, create personal liability for the agent. See B M Homes, 376 So.2d at 676; and Lutz, 199 Ala. at 629,75 So. at 288. In addition, the contract in this case, which was drafted by Dr. Shirley, is replete with references to Dr. Shirley, both individually and in conjunction with the P.A., such as "we are pleased to know that you will become associated with our practice . . .," "we agree to the following . . .," "I
[Dr. Shirley] will be responsible to the Association and will use discretion in my time off from the practice," and "you will be entitled to attend two major medical meetings per year . . . [and] [a]dditional meetings will be considered with my
approval." (Emphasis added.) The facts of this case being that Dr. Shirley is the sole stockholder in the P.A., that he signed his own name to the contract, and that he repeatedly referred to himself in the contract are certainly sufficient to create a jury question as to whether he intended to be a party to the employment contract. Therefore, we find that the trial court properly sent this issue to the jury.
III. The defendants, finally, assert that the evidence is insufficient to sustain the jury's finding that they, rather that Dr. Lin, repudiated the contract. They argue that Dr. Lin breached the contract by refusing to perform his obligations under the agreement, thus freeing them from any further obligations under the contract. Dr. Lin's duties under the agreement are clearly delineated in the contract itself, as follows:
 "As part of this agreement you will agree to the following:
 "1. You will devote full time to the practice of Sheridan W. Shirley, M.D., P.A.
 "2. Any outside professional income, regardless of nature, will belong to the P.A.
 "3. The terms of this contract will become effective December 3, 1984.
 "4. You will work toward the betterment of the practice and will represent the Association in a professional manner.
 "5. You will assume the responsibilities of the practice as they are designated to you."
Dr. Lin argues, to the contrary, that he fulfilled his obligations under the contract and that the defendants repudiated the contract when, after the P.A. began experiencing financial difficulties, they insisted that *Page 1334 
he work on a "production basis," rather than for the agreed salary, or that he find a new job.
The record shows that during a meeting between Dr. Shirley and Dr. Lin on November 9, 1985, Dr. Shirley did inform Dr. Lin that, as a result of financial difficulties suffered by the P.A., Dr. Lin would no longer be paid his agreed upon salary. Rather, beginning December 1, 1985, Dr. Lin would be paid on a "production basis," i.e., his pay would be based on his collections. Dr. Lin testified that the new payment scheme was non-negotiable and that Dr. Shirley insisted that he accept the new terms or leave. Dr. Lin also introduced into evidence a letter dated November 21, 1985, in which Dr. Shirley wrote him the following:
 "The big problem, as I see it, is what are we going to do? Since I can no longer afford to pay you a salary and must place you on a production basis . . . You must get to work or leave." (Ellipses in original.)
The evidence further shows that Dr. Lin did not accept or acquiesce in the defendants' new terms.
As for the defendants' argument that Dr. Lin failed to meet his obligations under the contract by refusing to visit, examine, or attempt to build a relationship with the existing patients of the P.A. and that he insisted on treating only the new patients whom he brought into the clinic, we find such allegations unsupported by the record. The record does show that Dr. Lin's primary concern was finding new patients for the P.A., as opposed to working with Dr. Shirley's former patients, and that he worked with former patients only when asked to do so. However, the record does not show that Dr. Lin ever refused to perform these tasks or any others required by the terms of the contract.
The following rules concerning anticipatory breach, or repudiation of a contract have been recognized in Alabama:
 "To amount to a renunciation, . . . the evidence must show words or acts evincing an intention to refuse performance within the future time allowed by the contract.
 ". . . 'Merely because a given act or course of conduct of one party to a contract is inconsistent with the contract is not sufficient; it must be inconsistent with the intention to be . . . bound by it.'
". . . .
 " 'Repudiation, among other things, means rejection, disclaimer, renunciation, or even abandonment.'. . .
 "Some authorities state that the repudiation by one party 'must at least amount to an unqualified refusal, or declaration of inability, substantially to perform according to the terms of his obligation.' "
Draughon's Business College v. Battles, 35 Ala. App. 587, 590,50 So.2d 788, 790 (1951) (emphasis added) (citations omitted). Once a party to a contract repudiates the agreement, the other party is excused from further performance. Denver-AlbuquerqueMotor Transport, Inc. v. Green, 57 Ala. App. 709, 712,331 So.2d 719, 722 (1976); Mid-State Homes, Inc. v. Brown, 47 Ala. App. 468,473, 256 So.2d 894, 898 (1971).
We find that the evidence in this case supports the jury's finding that Dr. Shirley's insistence on a new payment scheme for Dr. Lin constituted an "unqualified refusal" to perform the terms of the prior agreement and, thus, constituted a repudiation of the contract, entitling Dr. Lin to maintain an action for damages resulting therefrom. We further find that the evidence supports the jury's finding that Dr. Lin's conduct did not rise to the level of a repudiation of the contract and, thus, did not excuse the defendants from further performance under the contract. Accordingly, the trial court properly refused to grant the defendants' motion for J.N.O.V. on this issue.
IV. Dr. Lin asserts on his cross-appeal that the trial court erred in its instructions to the jury concerning the measure of damages. However, in his brief, Dr. Lin expressed his wish that our review of this question be predicated upon a finding of reversible error on at least one of the *Page 1335 
grounds asserted by the defendants. Dr. Lin stated that "because of his distance from the forum and the time and emotional commitments required for a new trial," if the only reversible error is the one raised by him, "[he] prefers the present verdicts to stand" and "expressly waives his right to a new trial." Because we have found no reversible error in any of the grounds asserted by the defendants, we hereby grant Dr. Lin's wish.
AFFIRMED.
MADDOX, ALMON, ADAMS, STEAGALL and KENNEDY, JJ., concur.
[1] The letter provides as follows:
"Dear Gerry:
 "Not only are we pleased to know that you will become associated with our practice but it is our belief that you will not regret having made this decision.
 "In accordance with our various correspondences and conversations, we agree to the following:
 "1. For the first year you will receive a salary in the amount of $70,000.00. The second year's salary will be $90,000.00 from which will be deducted $10,000.00 to fund your equity purchase of the P.A. The net salary, of course, will be $80,000.00.
 "2. You will immediately become eligible to participate in the group hospital insurance program which is totally paid by the P.A. Also, there is group term life insurance included in this plan for which the premiums will be paid by the P.A.
 "3. It is agreed that disability insurance will be furnished to you in an amount to be determined by our insurance advisors.
 "4. You will be entitled to attend, at the P.A.'s expense, at least two major medical meetings per year with the maximum of two weeks' duration. Additional meetings will be considered with my approval. You will also be entitled to two weeks per year vacation time.
 "5. Malpractice insurance will be paid for by the P.A. for your coverage.
 "6. We agree to payment of one half of the relocation expenses for household goods from La Grange, Georgia to Birmingham, Alabama.
 "7. I will be responsible to the Association and will use discretion in my time off from the practice.
 "8. Medical and professional dues will be paid by the Association in reasonable amounts. Included in the dues structure will be memberships in the Jefferson County Medical Society, State Medical Society, American Urological Association, Southeastern A.I.A. and other memberships as may be determined by necessity.
 "9. You will participate in the retirement plans of the P.A. in conformity with the trust provisions of the plans.
 "10. Parking expenses at office will be paid by the Association.
 "11. At the end of the second year and upon your admittance to the P.A. as a stockholder, the P.A. will purchase from CAPA Leasing Company all medical equipment owned by them at the fair market value at the time of purchase.
 "12. At the time of your admittance into the practice as a stockholder, appropriate steps will be taken to secure life insurance to fund a buy and sell agreement for the stock of the Association.
 "13. Upon admittance to the P.A. as a stockholder, the accounts receivable at the date of your admittance will be frozen as though they were owned by Dr. Shirley personally. Dr. Shirley's salary will be adjusted to allow for the collection of these accounts in a manner so as not to be detrimental to the operation of the P.A.
 "14. From the date of admittance of Dr. Lin as an associate the accounts receivable will be a zero base from which to build in the appropriate ratio of the stockholders' ownership.
 "15. At the beginning of the third year of your employment the ratios of ownership will be as follows:
Third year: Dr. Shirley 60%, Dr. Lin 40%
Fourth year: Dr. Shirley 55%, Dr. Lin 45%
Fifth year: Dr. Shirley 50%, Dr. Lin 50%
 "16. The terms of this contract are subject to change by mutual agreement of the parties at any time.
"As part of this agreement you will agree to the following:
 "1. You will devote full time to the practice of Sheridan W. Shirley, M.D., P.A.
 "2. Any outside professional income, regardless of nature, will belong to the P.A.
 "3. The terms of this contract will become effective December 3, 1984.
 "4. You will work toward the betterment of the practice and will represent the Association in a professional manner.
 "5. You will assume the responsibilities of the practice as they are designated to you.
 "We look forward to having you with us and if you are in agreement with the terms of this letter please indicate your agreement in the space below. After executing this Agreement then please return the original to me in the enclosed envelope. The duplicate copy is for your files."
The signatures of both Dr. Shirley and Dr. Lin appear at the bottom of the letter.