Billy Joe Coaker seeks to revive and reassert claims he brought in 1987 under the Alabama Fair Dismissal Act (AFDA), Ala. Code 1975, §§ 36-26-100 to -108.
Coaker, a disabled veteran, was hired by the Washington County Board of Education on July 2, 1979. He advanced to the position of shop foreman, earning an annual salary of $24,157.28. However, on July 1, 1985, the Washington County Board of Education (the Board) voted to transfer Coaker to the position of general mechanic, at an annual salary of $18,924.85, effective August 1, 1985. Notice of the Board's decision was issued to Coaker on July 3, 1985. On July 11, 1985, Coaker requested a hearing before the Board under the AFDA. Due to various complications and delays, Coaker never received his hearing and he maintained his position as shop foreman.
On June 19, 1987, however, the Board notified Coaker that it was proceeding with its plan to abolish his position as shop foreman, and offered for his signature a contract to work as a mechanic, at an annual salary of $20,258.18. Instead of signing the contract, Coaker filed a petition for writ of mandamus or writ of prohibition and a complaint for declaratory and injunctive relief in the Circuit Court of Washington County on August 26, 1987.
A letter to Coaker from the attorney for the Board dated October 13, 1987, recites that the parties had reached a settlement. The letter recounts that, in exchange for the Board's agreement to transfer Coaker to the maintenance department and limit him to "light duty" assignments, Coaker agreed to accept the lower salary and to stipulate to dismissal of the suit. On November 19, 1987, the trial court dismissed Coaker's suit with prejudice.
Coaker was assigned to the maintenance department, but he did not receive light duty assignments as the Board had agreed. On October 30, 1989, he sent the Board a proposal defining "light duty." On December 15, 1989, the Board rejected Coaker's definition of "light duty", noting that Coaker had shown no medical records indicating that he had been restricted to light duty. The Board stated that it was "not in a position to pay a full salary to a 'light duty' employee." The *Page 40 
Board also warned that it would not tolerate "Coaker's erratic absences from work."
While at work on January 24, 1990, Coaker suffered a shoulder injury when he slipped from a ladder and fell to the ground with a 70-pound load of shingles he was carrying. Later in the day, he reported the incident to his supervisor, and he sought treatment from Dr. H.C. Patterson at Chatom Clinic, who prescribed pain medication. He did not return to work the next day. On February 6, 1990, Dr. Michael L. Granberry, an orthopedic surgeon, performed surgery on Coaker's shoulder.
That same day, the Board issued Coaker a letter accusing him of neglecting his job because of his excessive absences and his inability to carry out "usual and expected duties." The Board required Coaker to submit a doctor's excuse for absences exceeding three days. Also, the Board stated that for any extended absences, Coaker must request a leave of absence for good cause, which had to be "recommended by the Superintendent and approved by the Board."
On February 28, 1990, Coaker filed a new petition and complaint which formed the basis for the present appeal. Coaker contended in his complaint that the Board had repudiated its agreement to give him light duty, and that his assignments included heavy duties which caused him to suffer personal injuries, requiring him to use sick leave and leave without pay. He sought a writ of mandamus or injunctive relief ordering the Board to reinstate him as shop foreman, to grant him an adjusted salary and backpay, and to cease further efforts to transfer him. In the alternative, Coaker requested declaratory relief for the Board's failure to comply with the AFDA. On June 7, 1990, the Board answered, denying that it had repudiated the contract and asserting that the issues Coaker had raised were moot.
Coaker's shoulder disability continued throughout 1990 and the first part of 1991. He also developed pain in his back. Periodically, Coaker's problems caused him to take absences. In connection with these absences, he submitted at least three letters of explanation from Dr. Granberry. However, by a letter dated July 25, 1991, the Board sent Coaker a proposal of termination for excessive absences without leave, neglect of duty, and inability to satisfactorily perform his assignments. On August 22, 1991, the Board held a hearing at which it upheld the termination. Coaker appealed the Board's decision to a three-member Fair Dismissal Panel.
On August 19, 1991, Coaker filed a motion for preliminary injunction to prohibit his termination. The trial court conducted ore tenus proceedings on Coaker's motion on October 9 and November 20, 1991. Meanwhile, on November 6, 1991, Coaker accepted a settlement payment from the State Board of Adjustment in the amount of $12,171.43, representing a compensation of $11,701.44 for 34 weeks of lost wages beginning on January 26, 1990, and a compensation of $469.99 for uninsured medical expenses following his shoulder injury.
The trial court denied Coaker's motion for preliminary injunction on February 12, 1992. On March 11, 1993, the trial court issued its final judgment, denying all relief without any specific findings of fact.
Four issues are relevant to this appeal: (1) whether actions of the parties have rendered Coaker's issues moot; (2) whether the Board's refusal to limit Coaker to "light duty" assignments worked a repudiation of the settlement of his 1987 suit; (3) whether Coaker may revive and reassert his 1987 suit; and (4) whether Coaker is entitled to prevail upon his 1987 claim under the AFDA.
When the trial court in a nonjury case enters a judgment without making specific findings of fact, the appellate court "will assume that the trial judge made those findings necessary to support the judgment." Transamerica Commercial Fin. Corp. v.AmSouth Bank, 608 So.2d 375, 378 (Ala. 1992). Moreover, "under the ore tenus rule, the trial court's judgment and all implicit findings necessary to support it carry a presumption of correctness." Transamerica, 608 So.2d at 378. However, the judgment of a trial court carries no presumption of correctness when the judge improperly applies the law to the facts.Marvin's, Inc. v. Robertson, 608 So.2d 391 (Ala. 1992). *Page 41 
In denying all relief, the trial judge apparently accepted either that the Board had not repudiated the contract, or that the parties' actions had rendered Coaker's issues moot. For the reasons that follow, we find that the trial court erred.
First, we dispense with the Board's contention that the issues raised by Coaker were rendered moot. We agree that "[t]he general rule in this state is that if, pending an appeal, an event occurs which makes determination of it unnecessary, or renders it clearly impossible to grant effective relief, the appeal will be dismissed." Grant v. Cityof Mobile, 50 Ala. App. 684, 687, 282 So.2d 285, 287
(Ala.Civ.App.), cert. denied, 291 Ala. 458, 282 So.2d 291 (1973). Essentially the same rule applies to cases pending a judgment by the trial court. Chisolm v. Crook, 272 Ala. 192,130 So.2d 191 (1961). However, an exception to the general rule exists where the appellate court's failure to render a decision on an issue would leave collateral rights of the parties undetermined. Grant, supra.
The Board contends that Coaker has already received compensation for the time he was off work following his shoulder injury. Also, the Board contends that in the wake of the restrictions Dr. Granberry placed on Coaker in April 1991, the Board determined that there was no job in the maintenance department that Coaker could do. Therefore, it issued Coaker a notice of termination on July 25, 1991. The Board further alleges that on July 1, 1993, after the appeal was filed, the Fair Dismissal Panel determined at a termination hearing that Coaker should be returned to work for a 30-day trial period. According to the Board, however, Coaker reinjured his back at the meeting and did not return to work as the panel had ordered.
Even if we could accept the Board's statements concerning events which occurred after trial as true without further proof, the Board cites no action by either party which would render all of the issues raised by Coaker moot. A controversy remains as to whether the Board repudiated its settlement with Coaker, and if so, what remedy is due him. We, therefore, hold that the parties' actions did not render moot the issues raised by Coaker.
We now turn to the issue of repudiation. Repudiation of a contract may occur by renunciation, that is, "words or acts evincing an intention to refuse performance within the future time allowed by the contract." Shirley v. Lin, 548 So.2d 1329,1334 (Ala. 1989) (quoting Draughon's Business College v. Battle,35 Ala. App. 587, 590, 50 So.2d 788, 790 (1951)). "Some authorities state that the repudiation by one party must at least amount to an unqualified refusal, or declaration of inability, substantially to perform according to the terms of his obligation." Shirley, 548 So.2d at 1334.
Rushin Allday and Verne Beech, Coaker's co-worker and superior in the maintenance department, provided undisputed testimony that Coaker was never given light duty while he worked in the maintenance department. In fact, they testified that Coaker received the same assignments as everyone else, including occasional heavy duty assignments.
Although the Board was not necessarily obligated to adopt Coaker's definition of "light duty," the record reflects that it refused even to negotiate with him as to the meaning of the term. Instead, the Board flatly stated in its letter of December 15, 1989, that it "was not in a position to pay a full salary to a 'light duty' employee." The Board's conduct clearly amounted to an unqualified refusal or declaration of its inability to provide Coaker with a job limited to light duty assignments. Therefore, we hold that the Board repudiated the settlement contract. Insofar as the trial court determined that no repudiation of the settlement had occurred, we find that its judgment was unsupported by the evidence and plainly and palpably wrong.
We now consider whether Coaker may revive and reassert his 1987 suit. Because we hold that the Board repudiated the settlement contract, the only remaining question is whether revival and reassertion of the former suit is an appropriate remedy for Coaker. Once entered into, a settlement agreement is as binding on the parties as any other contract. Nero v.Chastang, 358 So.2d 740 (Ala.Civ.App.), cert. denied,358 So.2d 744 (1978). Such an agreement may not be *Page 42 
repudiated by either party; it will be summarily enforced by the courts. Nero, 358 So.2d at 743. A settlement agreement will be reopened only for accident, mistake, or fraud. Id. Where settlement was obtained by fraud, the agreement may be set aside in its entirety. Burks v. Parker, 192 Ala. 250,68 So. 271 (1915).
In Alabama, the legal definition of fraud includes even innocent misrepresentations if the misrepresentation concerns an existing material fact upon which the plaintiff relied, proximately resulting in damage to him. Ala. Code 1975, §6-5-101; Taylor v. Moorman Mfg. Co., 475 So.2d 1187 (Ala. 1985). The good faith of a party in making a representation that later proves to be false is immaterial; in the eyes of the law, the misrepresentation is as fraudulent as if it had been intentional. Smith v. Reynolds Metals Co., 497 So.2d 93
(Ala. 1986).
In the present case, the Board concedes that Coaker negotiated for light duty assignments as part of the settlement. He accepted a settlement agreement containing a provision that he receive only light duty, but he did not receive light duty. As a result, he not only lost the opportunity to sue the Board for its failure to hold a hearing before transferring him to a job with lower pay, but he also had to endure heavier duty assignments. It is undisputed that these assignments caused Coaker to suffer further injuries.
Therefore, we hold that whether the Board intended to grant him light duty assignments is immaterial; the Board's misrepresentation that it would offer him a position involving light duty assignments constitutes fraud and permits Coaker to have the agreement set aside. Accordingly, Coaker may set aside the settlement agreement that he entered into with the Board on or about October 13, 1987.
"The effect of setting aside the compromise is to place the parties in the original position; and all rights which are transferred, released, or created by the agreement are revested, restored, or discharged by the avoidance." 15A C.J.S.Compromise and Settlement § 43 (1967). In this case, the effect of setting aside the settlement is to reopen Coaker's 1987 suit against the Board for its failure to hold a hearing prior to his transfer as he had requested.
We now address whether Coaker is entitled to prevail on his 1987 claim under the AFDA. There is no question that the Board had authority to transfer Coaker for the "good and just cause needs of the school." Ala. Code 1975, § 36-26-107. However, it was incumbent upon the Board to follow the statutory guidelines for accomplishing the transfer. Id. Following Coaker's timely appeal, the Board had 60 days from the date of its decision to hold a hearing on the transfer. Ala. Code 1975, § 36-26-106. Its failure to do so effectively canceled its authority to re-notice and transfer Coaker on the same grounds two years later. See Bolton v. Mobile County Bd. of Sch. Comm'rs,514 So.2d 820 (Ala. 1987). Therefore, Coaker is entitled to prevail on his 1987 claim under the AFDA.
Accordingly, this case is reversed and the cause remanded with instructions to issue a writ of mandamus directing the Board to (1) reinstate Coaker to his original position and salary as of November 17, 1987, with adjustments for increases in the cost of living and other nondiscretionary pay raises; (2) cease further efforts to illegally transfer Coaker; (3) compensate Coaker with backpay plus interest and adjustments for increased cost of living and nondiscretionary pay raises, from November 17, 1987, less the $11,701.44 that Coaker received for 34 weeks of lost wages from the State Board of Adjustment; and (4) award any other equitable relief to which Coaker may be entitled.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THIGPEN and YATES, JJ., concur. *Page 43