52 So.2d 510

### WATERS et al. v. WEINTRAUB.
### 6 Div. 121.

Supreme Court of Alabama.
May 10, 1951.

Wm. S. Pritchard, Victor H. Smith and Pritchard & McCall, all of Birmingham, for appellants.

Berkowitz, Fleisher & Miller, Birmingham, for appellees.

STAKELY, Justice.

This is a suit brought by Max Weintraub (appellee) against N. H. Waters and Anna Lois Waters individually and as partners doing business under the firm name of Waters Theater Company (appellants). The complaint consists of five counts. The first two counts are for breach of an alleged contract in writing made between the plaintiff and the defendants. The last three counts are the common counts for money had and received, for money paid and on account respectively. There was verdict and judgment for the plaintiff for $2400.00. On motion for new trial the plaintiff consented to a reduction of the verdict and judgment to $1369.01.

Waters Theater Company by N. H. Waters, designated as sellers and Max Weintraub, designated as purchaser, executed a written contract whereby in substance (1) the sellers agreed to convey to purchaser certain real estate located at the southeast corner of 3rd Avenue North and 24th Street in Birmingham, Alabama, more particularly described in the contract, subject to the existing mortgage thereon which the purchaser agreed to assume as a part of the purchase price and (2) whereby the purchaser agreed to transfer to sellers "property located at 1617–2nd Avenue South known as Dunbrik Products Co., said property consisting of all machinery, inventory and equipment used in the manufacture of brick by purchaser located at the above address. Purchaser to transfer to seller lease on property being occupied by Dunbrik Products Co. Also one dump truck and spare parts, etc., one car of cement (just arrived)." The contract contained the following provision: "Agreement to exchange these properties based on figures given to Mr. J. F. Ford, Jr." and further provided "If trade is accepted, the Waters Theater Co. is to take over plant on Monday, April 19, 1948. Pro rations are to be made as of that date. All income at plant to be held in escrow until satisfactory title is passed on 3rd Avenue property."

The contract acknowledged receipt of $1000.00 deposit as earnest money and provided for a cash payment on closing of the trade by purchaser to sellers of the sum of $10417.00. The contract provided that both parties were to pay to W. O. Wood Realty Company as their agent as compensation the sales commission adopted by the Birmingham Real Estate Board.

The contract was executed on April 17, 1948. As provided in the contract two days later on April 19, 1948 the sellers were "to take over the plant" and did in

fact take possession of the same. From that date until May 4th sellers operated the brick plant, purchased supplies, used its inventory, manufactured and sold its products. On May 4, 1948 Waters Theater Co. wrote a letter to Max Weintraub and to W. O. Wood Realty Co., agent for Max Weintraub, cancelling the contract on the ground of alleged misrepresentations claimed to have been made by the appellee. Among other things the letter stated:

"We have heretofore tendered the keys back to you to your property and business, and you are responsible for your property and business.

"We hereby again tender back to you all things of value which belong to you, referred to in said contract. The contract is cancelled insofar as the undersigned is concerned on account of said misrepresentations as herein stated."

Despite the aforesaid letter to appellee, appellee's attorney advised the appellants in writing of a time and place fixed for the closing of the transaction. At this time the appellee and his counsel were present with certified check and all transfers necessary to consummate the transaction and offered to do so. The appellants did not attend.

Tendencies of evidence show that the appellee pursuant to the contract paid the real estate broker a commission of $500.00. For the examination of the abstract of title to the real estate owned by the appellants and to be conveyed to appellee under the contract, the appellee paid the sum of $50.-00 to an attorney. At the time of filing of the suit and the time of the trial appellants had in their possession the sum of $135.00 derived from the operation of the brick plant which had not been returned to the appellee. The appellants admitted that there had been shipped from the brick plant to the Fairfield Theater Company a quantity of brick having a fair market value in the amount of $542.-90, the Fairfield Theater Company being a company in which appellant N. H. Waters' son had an interest or was the owner. This amount was not paid by the Fairfield Theater Company.

Tendencies of the evidence showed that the rent for which appellee was liable for the period during which the appellants were in possession of the premises occupied by Dunbrik Products Co. was not paid by them and was in the amount of $100.-00. Tendencies of the evidence also show the consumption by appellants of various supplies, materials and other property on hand at the time appellants took possession but not replaced at the time possession was surrendered. Tendencies of the evidence also showed damage or injury to a fence and to machinery in the plant during the time the appellants had possession of Dunbrik Products Co.

Tendencies of evidence showed that a salesman, Edgar Cantrell, of the Wood Realty Company undertook to bring the appellee and N. H. Waters, one of the appellants, together and negotiations were begun several days before the contract sued on was executed. The salesman went with N. H. Waters and his auditor, J. F. Ford, Jr., to the brick plant and discussions with regard to the machinery and equipment, cost of manufacture and amount of business that had been done by the plant and the unfilled orders for the product which were on hand and other similar matters were had between N. H. Waters and J. F. Ford, Jr. on the one hand with the appellee and his brother Joe Weintraub, who was a stockholder and director of Dunbrik Products Co. and supervised the keeping of the books thereof, on the other. Waters left it to his auditor Ford to obtain the information about the business of the concern and executed a contract on what Ford reported to him. In fact, as shown, the contract provided that, "Agreement to exchange these properties based on figures given to J. F. Ford, Jr." was placed in the contract on the insistence of Waters.

Tendencies of the evidence further showed that Edgar Cantrell, the real estate salesman employed by W. O. Wood Realty Company, went with N. H. Waters and appellee to the Dunbrik Products Co. and went over the plant and examined it, checked all the equipment and watched the making of bricks. Tendencies of the evi-

dence showed that Max Weintraub told them what the cost per thousand was to make the bricks and what the net profit was. Mr. Ford was not present on this occasion. Two or three days later Cantrell went with Ford and they then checked with Max Weintraub on how many bricks they made per hour, the price on different kinds of bricks and got an analysis of what was put in different kinds of bricks and the full details on the cost of making bricks. Tendencies of the evidence showed that Ford looked at the machinery and asked lots of questions about it and went to the office and examined their records and orders and took figures off the records.

Tendencies of evidence showed misrepresentations made by appellee to the appellants in connection with orders for brick on hand with the Dunbrik Product Co. and in connection with inventories on hand by the company and accounts due the company. There was evidence however tending to show that such misrepresentations were not made.

I. It is earnestly insisted by the appellants that the appellee has no right to recover because the damages, if any, were damages suffered by the Dunbrik Products Company, which was at the time a corporation. The proof tended to show losses suffered by reason of differences between conditions existing when the business and assets of Dunbrik Products Company were turned over to appellants and when they were turned back to appellee on repudiation of the contract by appellants. These differences were in the amount and value of supplies on hand, conditions resulting from injuries to the machinery and plant during the period when the appellants had charge and possession, failure to account for accounts collected and obligations incurred by the appellants in the operation of the business during the period which appellee was forced to pay.

It is true that Dunbrik Products Company was a corporation at the time when the contract was made and was not dissolved until some months after the institution of this suit. The corporation had three stockholders, Max Weintraub, the appellee, his brother who testified in the case in behalf of appellee and their father. The contract sued on provides for the transfer to the appellants of the machinery, inventory, equipment and accounts of the Dunbrik Products Company. The proof shows that at the time and place set by appellee for closing the transaction appellee appeared with all transfers necessary for closing the contract. It is without dispute that the appellants took possession and charge of the business and assets of the company. Appellants retained possession for two weeks and during that time operated the business. There was no protest on the part of Dunbrik Products Company or any one else when appellants had possession. It is in this two weeks period that the damage is claimed by appellee to have been done. The letter of repudiation written by appellants refers to the business and property as being that of Max Weintraub.

Under the circumstances, so far as the appellants are concerned, the appellee must be regarded as the seller and the damage, if any, must be considered as sustained by him. In accordance with the statute the items which appellee was to acquire and sell to appellants are known as "future goods" and "Where the parties purport to effect a present sale of future goods, the agreement operates as a contract to sell the goods." Section 11, Title 57, Code of 1940; Williston on Sales, Vol. 1, p. 367. See Central of Georgia Ry. Co. v. Isbell, 198 Ala. 469, 73 So. 648; 55 C.J. p. 1065.

II. It is argued that the course followed by the appellee in the present case amounts to a rescission of the contract on his part and assuming that this be true, he cannot at the same time recover damages under a contract which he has not performed. This is not correct. The principle here applicable has been stated by the Supreme Court of the United States in Anvil Mining Co. v. Humble, 153 U.S. 540, 14 S.Ct. 876, 880, 38 L.Ed. 814, as follows: "Whenever one party thereto is guilty of such a breach as is here attributed to the defendant, the other party is at liberty to treat the contract as broken, and desist from any further effort on his part

to perform; in other words, he may abandon it, and recover as damages the profits which he would have received through full performance. Such an abandonment is not technically a rescission of the contract, but is merely an acceptance of the situation which the wrong doing of the other party has brought about." See Williston on Sales, Vol. III, pp. 276–277.

The theory of the appellee is that there was a wrongful repudiation of the contract by appellants and although the appellee was at all times, ready, able and willing to comply with the contract, the appellants refused to comply with its terms. This is correct. Long v. Addix, 184 Ala. 236, 63 So. 982. The appellee under the circumstances can maintain an action on the contract for damages which so far as possible may put him in as good position as if the contract had been performed. Authorities supra.

III. In Lambert v. Jefferson, 251 Ala. 5, 36 So.2d 594, 596, this court quoting from King Land & Improvement Co. v. Bowen, 7 Ala.App. 462, at page 480, 61 So. 22, 28, said: "* * * that 'general damages are such as naturally and necessarily flow from the wrong act; while special damages are such as naturally, but do not necessarily flow from it. The former do not have to be pleaded in order to give defendant notice that they will be proved at the trial; for they are implied by law, and he is supposed to know, and can prepare to defend as to, all damages that necessarily result from the wrong done. Special damages, however, do have to be set out and claimed in the complaint to the end that the defendant, who could not possibly in all cases anticipate them, may have proper notice of them, and thereby have opportunity to prepare to meet at the trial the proof as to them.'"

The general damages which the appellee would be entitled to recover in the present case would be the difference between the contract price and the value of the real property at the time of the breach of the contract. Greenberg v. Ray, 214 Ala. 481, 108 S. 385. But there does not appear to us to be any effort in the case to recover general damages but only special damages. Recovery was allowed of special damages such as has been heretofore pointed out. Some of these items of special damage are not claimed in the complaint and therefore are not recoverable. Count one of the complaint merely claims damages for the breach of the contract to convey the real estate and alleges in effect that although the plaintiff has complied or offered to comply with all the terms of the agreement on his part the defendants breached the said agreement in this respect,—the defendants failed and refused to convey to plaintiff said real estate on the terms set forth in the agreement.

Count two contains the following allegations: "* * * that, thereafter, though plaintiff was at all times ready, willing and able to perform the contract and to comply with all its terms on his part, defendants failed and refused to sell and convey the said real property to plaintiff in accordance with the terms of said agreement; and that as a proximate consequence of the aforesaid wrongful breach of the agreement on the part of the defendants, the plaintiff was greatly damaged; plaintiff was wrongfully deprived of his business, Dunbrik Products Company, the credit standing and good will of said business was impaired, plaintiff lost the profits he would have had in the normal course of said business, plaintiff was caused to expend large sums in replenishing his inventory which had been depleted by defendants, plaintiff was forced to expend much time, effort and money in reestablishing his said business; and plaintiff claims $10,000 as damages."

It is obvious from the foregoing that there is no claim in the complaint for damages to the machinery of the business, to a fence on the premises of Dunbrik Products Company, for failure to account for collections or damages resulting from the creating of obligations in the operation of the business which the appellee was forced to pay. Furthermore there is no claim in the complaint for damages for the expense to which the appellee was put in carrying out his part of the trade, namely,

the payment of the fee to the real estate brokers or the charge made by his attorney. All these items are clearly special damages, if any, and cannot be recovered in the absence of a claim therefor in the complaint. Lambert v. Jefferson, supra; Blankenship v. Lanier, 212 Ala. 60, 101 So. 763; Columbia Motors Co. v. Williams, 209 Ala. 640, 96 So. 900.

■ The court gave written charges requested by the appellants to the effect that the plaintiff could not recover any damages on account of impairment of the credit and good will of the business of Dunbrik Products Company and also that the plaintiff could not recover any damages on account of expenditure of time, effort and money in reestablishing his business. But even if these items were eliminated this still leaves in the case items of special damages which were not claimed in the complaint. The verdict of the jury for $2400.00 was on motion for new trial reduced by the court to the sum of $1369.01. While it may be true that in making this reduction the court acted to purge the verdict of nonrecoverable items, we are furnished no guide by which we can reach this conclusion. We have examined the record very carefully in this regard but cannot say that the figures speak for themselves.

■ IV. Since the case must be tried again there is one other matter to which we should refer as a guide to further proceedings. It is claimed by the appellants that the contract to convey the property located at the Southeast corner of 3rd Avenue and 24th Street in Birmingham was not signed by Lois Waters and since she owned an interest in the property the contract is not binding on her by virtue of the statute of frauds. This is correct. A parol, executory agreement for the purchase of land is invalid under the statute of frauds and this applies to partnership property. Talley v. Talley, 248 Ala. 84, 26 So.2d 586; Butts v. Cooper, 152 Ala. 375, 44 So. 616. This however would not affect the validity of the contract so far as N. H. Waters is concerned.

For the errors indicated the judgment of the lower court is reversed and the cause is remanded.

Reversed and remanded.

LIVINGSTON, C. J., and FOSTER and LAWSON, JJ., concur.