256 So.2d 894

**MID–STATE HOMES, INC., a Corporation**

**v.**

**Letha M. BROWN.**

**6 Div. 104.**

Court of Civil Appeals of Alabama.

Nov. 3, 1971.

Rehearing Denied Jan. 12, 1972.

Ronald H. Strawbridge, Vernon, Fite, Davis & Fite, Hamilton, for appellee.

R. A. Norred, Birmingham, for appellant.

BRADLEY, Judge.

Appellee filed suit against appellant in the Circuit Court of Lamar County claiming that appellant owed her a certain amount of money resulting from an agreement to purchase some real estate. The complaint contained three counts. Count One claimed that appellant owed appellee $476.60 plus interest; Count Two claimed that appellant owed appellee $476.60 due by

account stated; and Count Three claimed $476.60 because of the failure of consideration for the agreement to purchase certain described real estate. A demurrer was filed to the complaint, but never ruled on by the trial court. The record is devoid of any formal plea or answer being entered by the appellant prior to trial, but the trial judge, in his charge to the jury, stated that appellant had pled the general issue. Trial was had before the court and jury, with a verdict and judgment for the appellee in the amount of $525.45. There was no motion for new trial.

The first four assignments of error contend that the trial court erred to reversal when it refused to give the written general affirmative charges with and without hypothesis as requested by appellant.

The evidence showed that appellee signed an agreement with appellant on October 27, 1967 wherein appellant agreed to sell appellee a particularly described parcel of property in Lamar County, Alabama. In return, appellee agreed to pay $100.00 upon signing the agreement and to make monthly payments of $53.80 until the balance of $7,747.20 was paid. Appellee paid the $100.00 and stated that she made seven monthly payments thereafter.

The agreement further provided that appellant was to retain title to the property until the total amount agreed upon ($7,747.20) was paid.

Appellee testified that the agreement she signed described the property she was buying and that she was shown the boundaries of the lot by the surveyor who had surveyed the lot and placed stakes on the corners of said lot. A copy of the survey, dated September 22, 1967, was introduced into evidence as appellee's Exhibit "B".

Appellee stated that Mr. Connie Noland, the adjoining property owner, came out and had erected a chain link fence on a part of the property she had agreed to purchase. She stated she told him not to put the fence up on that property and showed them—Noland and Dixie Craft Co., the erectors for Noland—the first survey, but they still put the fence up. Appellee further stated that Noland claimed to own the parcel of land enclosed by the fence.

Appellee said she informed appellant about the fence and asked them to do something about it. She also stated she requested of appellant a second survey and this was done, as reflected by the copy of the survey introduced into evidence as appellee's Exhibit "C". Exhibit "C" showed the boundaries of the property to be the same, except for the existence of a fence on said property running from the northeast corner to a point on the south boundary line indicating an encroachment on said property of some 18 feet at that point.

Appellee says she stayed in the house for seven months, during which time she was trying to get appellant to do something about the fence. She said she told a representative of appellant that unless they moved the fence she was moving out of the house. She stated that she was told "not to move out until they straightened it out, * * *" The evidence shows that nothing was done by appellant.

Appellee stated that at the end of some seven months she moved out and asked for her money back, i.e., money paid down and the monthly payments made plus interest.

Appellee, in this suit, is claiming that she agreed to purchase a certain described parcel of property from appellant for a particular amount of money, and that appellant was to give title to this described property when paid the full amount agreed upon.

She contends that there has been a failure of consideration because appellant will be unable to give her title to the property she agreed to purchase due to the encroachment of the fence and the assertion by someone else of ownership to this piece of the property she had agreed to purchase.

The agreement provided that appellant would give appellee title to the property described in Exhibit "B" upon the payment of the final monthly installment on the total sum of $7,747.20. Appellee went into possession of the property upon entering into the agreement and paying $100.00 down. She lived there for 6 to 7 months, making each monthly payment as it became due. She also made certain repairs to the premises while living there. During this period she was trying to get appellant to remove the fence from the property she had agreed to buy. This was not done prior to her moving out.

Appellant says the question presented by this controversy is whether a "vendor is under a duty to remove a fence erected by third parties upon property possessed by the vendee under an 'Agreement for Deed' contract which makes no provision for such duty."

Appellee counters by saying that appellant, at the time of entering into the agreement and placing appellee in possession of the property described in said agreement and evidenced by the survey marked Exhibit "B" impliedly covenanted that it had good and merchantable title and was holding that title in trust for appellee who would be entitled to receive it upon completing the required number of payments; and that six months was a sufficiently reasonable period for her to wait on appellant to assert its ownership to the portion of the lot fenced off by Noland who claimed to own the property enclosed by the fence, so that she could have the enjoyment of the property she had contracted to purchase.

It is the law in Alabama that every contract for the sale of real estate, unless the contrary is specifically pointed out in the instrument itself, implies that the vendee will receive good and merchantable title. Kirkland v. O'Kelly, 218 Ala. 68, 117 So. 420.

In the instant case, there were no provisions in the contract of sale indicating that the vendor did not have good and merchantable title to the property described in the survey. Furthermore, the record of the present case is devoid of any suggestion that the vendor did not have good title at the time the contract of sale was consummated.

The record further shows that upon the signing of the contract of sale and the making of the down payment, the vendee was placed in possession of the premises.

At this point in the arrangement, the vendee now in possession of the premises could expect to become the owner thereof upon completion of her part of the bargain, i.e., complete the payment of the purchase price; and the vendor could expect to receive, in time, the purchase money and upon receipt of it, would be called upon to give a deed to the vendee conveying good title.

About a month after the contract of sale was entered into, a fence was erected by the adjoining landowner on a portion of the property which was the subject of the contract of sale between appellee and appellant. The adjoining landowner enclosed the property in question under claim of ownership.

The vendee called on the vendor to do something about the encroachment, and the vendor said that it would take care of it.

The Supreme Court said in Cullum v. Branch Bank at Mobile, 4 Ala. 21, that a purchaser of land, under a contract of sale, has the right under the law to expect good title; and, when some encumbrance to the giving of good title is discovered prior to the time of conveyance, the vendor must discharge it before he can compel the payment of the purchase money.

In the case at bar, the vendor, upon learning of the encroachment on the property it had agreed to convey to the vendee, assured vendee that it would take care of it. This assurance to undertake the removal of the encroachment made by the vendor to the vendee was but a present

recognition of the duty it undertook at the signing of the contract of sale to protect the possession of the vendee against adverse title claimants.

 The vendor, having the legal title to the property in question, could maintain an action in ejectment or in the nature of ejectment. McCormick v. McCormick, 221 Ala. 606, 130 So. 226. Whereas the vendee, under the contract of sale, had only the equitable title to the property and could not maintain the action of ejectment. Ritter v. Moseley, 226 Ala. 648, 148 So. 143.

Furthermore, since the adjoining landowner was claiming the property enclosed by the fence as the owner, the question of who had the superior title would naturally arise. This would certainly require the vendor, at some stage of the proceedings, to come in and prove its superior title and prevent the vendee from being dispossessed. Why should it not be expected to proceed first, as it had agreed to do, to prove its title to the property encroached upon and to protect the possession of the vendee when ultimately the question of title would have to be decided?

We can perceive of no good reason why the vendor should not have undertaken to remove the encroachment for the reason that the adjoining landowner was no mere trespasser, but one asserting a superior title, and vendor's title would have to be asserted in order for the adjoining landowner's claim to be defeated.

Therefore, we conclude that in contracts for the sale of land such as the one now before us, it is inherent therein that the purchaser in possession shall be protected from adverse title claims.

The record shows, however, that the vendor, although assuring vendee that the encroachment would be removed, never did undertake to do so.

After some six months of inaction on the part of the vendor, the vendee rescinded the contract and sued to recover the down payment, the monthly payments that had been made up to the time of rescission, and interest thereon.

In West v. Holman, 223 Ala. 114, 134 So. 667, the Supreme Court said:

"The decisions in this and other jurisdictions are to the effect that, *when the vendor refuses* and disables himself *to perform,* his repudiation and unjustifiable attempt to rescind, or his disabling himself to perform, *will entitle the vendee to recover the amount he has paid on the purchase price, on the idea that great injustice would be the consequence of not requiring repayment.*" (Emphasis added.)

Upon the signing of the contract of sale, appellant had promised to give good title upon the payment of the full purchase price.

Had appellee performed her part of the bargain by paying the full purchase price and appellant had suffered the encroachment to remain on the property described in Exhibit "B", appellant would not have been able to give a good and merchantable title to the property as envisioned by the implied terms of the contract.

Knowing this situation existed, why should appellee be required to carry out her end of the bargain just to find out that appellant could not deliver good title?

"It is a fundamental law of contracts that both parties thereto must be bound by the terms of the contract, or neither is bound." Baker v. Howison, 213 Ala. 41, 104 So. 239.

We do not believe that she was required to wait for that occurrence to come about.

 The time for furnishing marketable title is, of course, the time when performance is due. 7 Williston on Contracts, Section 923, p. 673. Performance in this case by vendee would be upon payment of the final installment of the purchase price. However, the law does not require that one

wait until performance is due to place a person in breach of contract. Under the doctrine of anticipatory breach of contract, the vendee could call upon its vendor to correct the situation, and upon the vendor's failing so to do, the vendee could treat the contract at an end. See Hochster v. De La Tour, 2 El. & Bl. 678. See also 4 Corbin on Contracts, 3rd Ed., §§ 959, et seq., and Pearce v. Hubbard, 223 Ala. 231, 135 So. 179; Saliba v. Brackin, 260 Ala. 103, 69 So:2d 267.

The two Alabama cases confirm that such doctrine is recognized in this State.

It is obvious that appellant had refused or failed to carry out its part of the agreement when it permitted the encroachment to remain on the property that was to be transferred to appellee, after having assured appellee that, in effect, it would be removed; therefore, in keeping with the rule laid down in West v. Holman, supra, where the vendor has refused or failed to perform, it would be clearly unjust not to permit the vendee to recover the amount she paid on the purchase price of the property. Otherwise, she would be forced to carry out her part of the bargain by paying the full purchase price—which would take about twelve years—just to learn that appellant could not give a good and merchantable title and, in all probability, would be precluded from clearing the title by the fact that the third party would have obtained title to the disputed property by adverse possession, had the encroachment remained undisturbed.

In the instant case, appellee sued only to recover the money paid at the signing of the contract, along with the monthly payments she made to appellant prior to quitting the premises, plus interest.

This is also the amount awarded to appellee by the verdict of the jury and the judgment of the trial court.

We find no error in the trial court's refusal of the appellant's written requested affirmative charges with and without hypothesis.

Appellant's fifth assignment of error related to the refusal by the trial court to give to the jury the following written charge:

"The Court charges the Jury that the Defendant was under no duty to remove or take down any fence that may have been constructed by authority of Persons who are not Party to this suit."

The appellant, being the legal titleholder, had the authority and duty to remove the encroachment, and having promised the appellee at the signing of the contract that it would give her good and merchantable title, and having later assured the appellee that it would get the matter straightened out, had assumed the duty of removing the encroachment so that it could give appellee a good title at a later date.

We find no error in the refusal of the trial court to give the charge which is the subject of assignment five.

Appellant's sixth assignment of error is based on the refusal of the trial court to give to the jury the following written charge:

"The Court charges the Jury that Defendant cannot be held liable for any alleged acts of the person Nolen or Dixie Craft Inc. referred to in this case."

This charge falls within the rationale of the answer to the contention of appellant that the trial court erred in refusing to give the charge which is the subject of assignment five, and we consider the trial court's refusal to give this charge to the jury to be correct.

No reversible error having been argued, the judgment of the trial court is affirmed.

Affirmed.

WRIGHT, J., concurs in the result.