331 So.2d 719

**DENVER–ALBUQUERQUE MOTOR TRANSPORT, INC., a corporation**

v.

**Cecil GREEN and Thomas Hudson.**

**Civ. 743.**

Court of Civil Appeals of Alabama.

May 5, 1976.

Russell L. Irby, Eufaula, for appellant.

William H. Robertson, Clayton, for appellees.

**BRADLEY, Judge.**

This is an appeal from a judgment of the Barbour County Circuit Court, Clayton Division, awarding Cecil Green and Thomas Hudson, appellees here, $4,357.96 plus costs. The amount is equal to mileage payments due appellees for four truck hauls, less fuel permit fees and incidental expenses already paid by appellant, Denver-Albuquerque Motor Transport, Inc., (hereinafter D & A).

D & A filed a complaint which commenced this suit on May 14, 1975. This complaint, sounding in detinue, sought possession from Green and Hudson of two identified Fruehauf refrigerated trailers, and claimed damages for wrongful detention thereof in the sum of two hundred dollars per day from May 7, 1975.

After a hearing held May 15 the county sheriff was ordered to seize the trailers and, upon D & A's posting of bond, to deliver the trailers to D & A. D & A posted such bond and was given possession of the trailers.

On June 23, 1975 Green and Hudson filed an answer and counterclaim. The answer admitted that D & A had title to the equipment in question, but alleged that Green and Hudson had a lien against the equipment for money owed them on a contract with D & A. The counterclaim sought judgment in the amount of $5,000, costs and attorney's fees.

In its amended complaint and reply, D & A denied the lien and demanded judgment in the sum of $2,036.60 for the unlawful detention of the trailers.

Trial was held before the judge sitting without a jury. On September 5, 1975 judgment was rendered in favor of Green and Hudson. D & A's motion for new trial was denied.

The facts of the case appear to be as follows:

On January 27, 1975 Green entered into a contract with D & A. In March, Green signed another identical Contractor Operating Agreement with D & A, to which Hudson was also a party. Under the terms of these form contracts, Green and Hudson, independent truckers, agreed to supply and operate tractors on behalf of D & A, who would supply trailers and arrange cross-country hauls for its customers. The contract gave D & A broad authorization to schedule hauls, and placed a great many requirements on Green and Hudson regarding operation of the vehicles. Clause 2(a) of the contract provided:

"Contractor [Green and Hudson] shall be paid *.38* cents-per-running-mile for each mile that the Equipment is operated for and on behalf of Carrier [D & A]. Such mileage shall be computed on the basis of the dispatch instructions communicated by Carrier to Contractor, from the origin to the destination of each movement specified on the dispatch, using the mileages published in the current edition of the Household Goods Carriers' Mileage Guide."

Green and Hudson testified that they made two hauls apiece for which mileage payments were never made by D & A.

In late April or early May, Green and Hudson completed their last hauls for D & A, unloading at separate points in Georgia. Thereafter they drove their equipment to Green's residence in Barbour County, Alabama, where they remained until the court order of May 15, 1975.

At the trial, Ralph E. Morach, witness for D & A, testified that, to his belief, the two truckers never contacted D & A's dispatcher after making their last Georgia deliveries. On cross-examination Morach conceded that he had no firsthand knowledge of the matter.

Green and Hudson testified that they did contact the dispatcher, and that the dispatcher specifically told them to go to Green's home to await further instructions because business was slack.

Green and Hudson further testified that on May 3 or 4 the dispatcher instructed them over the telephone to proceed to Lakeland, Florida. However, they were told they would not be paid thirty-eight cents per mile for the Lakeland run, but instead would only be reimbursed for fuel, about fifteen cents per mile. Green, who was speaking to the dispatcher on the phone, replied that they would not make the run for fuel costs only. The dispatcher answered that they would be in breach if they did not drive to Lakeland; Green told the dispatcher that D & A had breached first by ordering the Lakeland trip for fuel only.

After this phone call, Green and Hudson filed a lien on the trailers.

Subsequently, according to Green, the dispatcher was contacted and told by Green that the trailers would be delivered to any point requested if D & A would pay Green and Hudson all money owed them. Green's request for payment received no answer.

On approximately the 9th of May, Morach was told by officials at D & A to recover the trailers. Over a period of several days he repeatedly tried to reach Green and Hudson from Denver by telephone. None of these attempts succeeded.

Morach then flew to Barbour County and went with the deputy sheriff to Green's residence. Green was not there, so no contact was made.

Shortly thereafter the detinue suit was filed.

On appeal, D & A presents us with two issues. We shall address the second issue first, for it is dispositive of most matters involved here.

■ This issue is whether or not the trial court erred in finding that Green and Hudson were justified in "rescinding" the contract. Actually, the trial court made no finding of rescission, nor does the evidence show that recission was the issue involved. It is apparent that the trial court did find that D & A had breached the contract, thereby excusing Green and Hudson from further performance and supporting their counterclaim. The evidence is legally sufficient to support such a finding.

■ The previously recited evidence shows conflicting testimony as to whether or not the trips from Georgia to Barbour County and from there to Lakeland were ordered by D & A's dispatcher. It is the province of the trier of fact to resolve such conflicts, *Morgan v. Larde*, 282 Ala. 426, 212 So.2d 594. Presumably, the trial court decided that the dispatcher had so ordered. In such case, Green and Hudson were clearly entitled to thirty-eight cents per mile for the Lakeland run. D & A's insistence that the truckers perform for substantially less than one-half their contracted-for compensation was a repudiation of the contract, *Mid-State Homes, Inc. v. Brown*, 47 Ala. App. 468, 256 So.2d 894. Green and Hudson were within their legal rights in treating the contract as totally breached, *Saliba v. Brackin*, 260 Ala. 103, 69 So.2d 267. Their further performance was excused, and they had an immediate cause of action, *Waters v. Weintraub*, 255 Ala. 530, 52 So. 2d 510.

■ We are not impressed with D & A's contention that the drivers were not entitled to thirty-eight cents per mile because the Barbour County trip was for the drivers' benefit and not that of D & A. Contractual provision 2(a) expressly indicates that the test to be applied in determining the applicability of the thirty-eight cent rate is the dispatcher's instructions. There was testimony that the dispatcher had instructed appellees to drive to Barbour County. The findings of the trial court sitting without a

jury based on oral testimony are presumed correct, *Skipper v. Wright & Colquett*, 30 Ala.App. 409, 6 So.2d 896.

D & A also asserts that their refusal to pay thirty-eight cents per mile, while inconsistent with the contract, is not sufficient to justify finding total breach, *McAllister-Coman Co. v. Matthews*, 167 Ala. 361, 52 So. 416. We note that in the *McAllister* case the defaulting party's breach was a very minor incident in the course of a sizeable commercial contract. By contrast, D & A's repudiation of the thirty-eight cent rate goes to the very heart of the contract: this rate is the only consideration which passes to appellees. Insisting on performance at a much lower, unauthorized scale of compensation is clearly a substantial breach.

Our determination that the trial court committed no reversible error in finding the contract breached disposes of the great bulk of D & A's first issue. In arguing this issue D & A asserts that the trial court erred in construing certain provisions of the contract which require Green and Hudson to pay $100 per day for detaining the trailers, allow D & A to withhold payments to the truckers pending property damage claims, require certain paper work to be submitted by appellees, and require thirty-day notice of the termination of the contract. All of these points are argued on the basis of construction of the contract placing these obligations on Green and Hudson.

Since the contract has been breached, Green and Hudson are excused from further performance, *Waters v. Weintraub*, *supra*. Thus the arguments under appellant's first issue fail in every particular, including one aspect which requires some discussion:

Provision 1(g) of the contract reads in pertinent part:

". . . [I]t is agreed that Carrier [D & A] may immediately deduct, from any monies otherwise due to Contractor [Green and Hudson] hereunder, up to $2,500 per occurrence for any public liability or property damage claims which may be asserted against Carrier, . . . ."

Relying on this provision, D & A argues that they are entitled to deduct $997.18 for a traffic accident in which Green was involved while driving a D & A truck. There is no proof that D & A has paid this claim or that the claim has been adjudicated and reduced to judgment. The sole question is whether D & A is authorized to withhold the sum from Green's final settlement pending such payment to claimant or adjudication.

The record reveals that notice of the claim did not reach D & A until June 27, 1975, more than six weeks after their breach of the contract. It was too late then for D & A to invoke contractual privileges against Green, for those privileges had been lost with breach. The trial court was not in error in refusing to allow D & A's $997.18 deduction.

This interpretation in no way impairs any further recourse D & A may have against appellees arising out of the property damage claim: it merely denies them the contractually-created privilege of holding a reserve fund consisting of money due appellees pending the determination of such claim.

There being no error in the record, the judgment of the trial court is affirmed.

AFFIRMED.

WRIGHT, P. J., and HOLMES, J., concur.