This is an appeal from a judgment ordering the appellants, Joel and Carolyn Silverman, to reimburse Charmac, Inc. a pro rata share of the cost of developing property in Woodmere Estates Subdivision, Montgomery County, Alabama. We affirm.
The able trial judge, Joseph D. Phelps, stated the facts as follows in his order:
"Charmac is an Alabama corporation which was organized in 1973 by principals and key employees of Ballard Realty Company, including Mr. Silverman, for the purpose of developing Woodmere.
"Charmac acquired the property comprising Woodmere in March, 1973. At the time of the acquisition, Charmac and Mr. Silverman had entered into a verbal agreement whereby Mr. Silverman would acquire a house and ten acres of land in Woodmere for $64,000, would sell back to Charmac approximately four acres at $2,500 per acre, and would pay his pro rata share of the development costs, when the area in which his property was located was developed.
"On June 20, 1973, Charmac and Mr. Silverman entered into a written agreement stating:
 `For and in consideration of providing $64,600 (Sixty Four Thousand Six Hundred and No/100 Dollars) in front and money to CHARMAC, INC., the Silvermans purchased from CHARMAC, INC., a house and 10 acres at cost.
 `It is the intent of the Silvermans to retain approximately 6 acres of this tract and sell the remaining 4 acres more or less back to CHARMAC, INC. . . .
 `The Silvermans intend to retain the house and the following property: Block B, Lots 4, 5, 6, 7, 8, 9, 10, 21, 22, 23, 24, 25 and 26 being 6 acres more or less according to the Lotting Plan as prepared by Goodwyn Engineering Company, dated May 14, 1983.
 `The Silvermans agree to pay their pro rata share of development costs on a per lot basis on the lots described above. Payment shall be due and payable when that particular construction cost making these lots saleable is due and payable to the contractor.'"
"These ten acres as conveyed by Charmac to the Silvermans do not include all of the lots which, according to the agreement, the Silvermans were to retain after reconveying the four acres more or less. Attachment A [omitted from this opinion], which superimposes the ten acres conveyed to the Silvermans on the lotting plan referred to in the agreement, shows that portions of Lots 9 and 21 and all of Lot 10, to be retained by the Silvermans, had not been deeded to them.
"On April 9, 1974, the Silvermans conveyed 3.67 acres on the west side of the 10 acre tract to Charmac for $2,500 per acre.
"Charmac and Mr. Silverman originally planned to develop the Silvermans' property and the property adjacent to it as 100 foot lots. Their efforts to market 100 foot lots, however, were unsuccessful.
"In 1976, an independent consultant employed to make a market survey for Woodmere recommended that the property be rezoned for 75 foot lots. Charmac and Mr. Silverman agreed with the recommendation and had the property rezoned for 75 foot lots. The property was developed under the new plan as Plat 9B. . . .
"Under the new development plan, the Silvermans' property was to front on two streets — Woodmere Boulevard and Forest Grove Drive. Mr. Silverman was given the option of constructing or omitting Forest Grove Drive when Plat 9B was developed. Mr. Silverman chose to develop.
"On February 20, 1978, Charmac sold the Silvermans 0.27181 acres adjacent to the south boundary of their property for $2,500 per acre in order to give them complete ownership of two lots in the southwest portion of their property. *Page 894 
"In July, 1978, Charmac, on behalf of itself and Mr. Silverman, contracted with Blake and Vice, Inc. for the construction of streets, sewers and drains necessary for the development of Woodmere. The work was begun in August, 1978 and was completed in January, 1980. Charmac paid Blake and Vice, Inc. $632,411.80 for the work done in the subdivision and also paid Goodwyn and Mills $56,917.06 for engineering work in the subdivision.
"On February 12, 1980, Charmac requested the Defendants to pay a share of the development costs.
"On March 7, 1980, Charmac paid Alabama Power Company $5,277.22 for the installation of electrical service for the lots comprising Woodmere.
"The Defendants initially refused to pay a pro rata share of any development costs.
"Charmac instituted this action seeking a judgment against the Defendants for a pro rata share of the development costs. Subsequently, Mr. Silverman conceded that he should pay a share of the development costs of Forest Grove Drive and did not contest the amount of $31,387.01 claimed by Charmac for such development.
"The remaining question is whether Charmac is entitled to a share of the development cost of Woodmere Boulevard, adjacent to the Silvermans' property."
It must first be pointed out that the trial judge heard the evidence ore tenus. In a case tried ore tenus, there is a presumption of correctness and the trial court's findings will not be disturbed unless they are palpably wrong, without supporting evidence or manifestly unjust. Gertz v. Allen,376 So.2d 695 (Ala. 1979); Sudduth v. Sudduth, 366 So.2d 1102 (Ala. 1979). The trial court found that the Silvermans received essentially what they bargained for under the contract. The changes in the development plan did not substantially alter the performance of the Silvermans. Furthermore, the trial court found that the Silvermans agreed to the changes in the development plan.
The essence of the appellants' contentions is that the development of the property in accordance with the lotting plan of May 14, 1973 excused their duty to perform under the contract. The Silvermans contend their performance is excused for one of two reasons. First, the appellants allege Charmac insisted on performance substantially different from that contained in the original contract, and thus the appellants' performance is excused. Second, the Silvermans claim that abandonment of the original development plan excuses their duty by impossibility of performance.
Impossibility, or under Restatement (Second) of Contracts, § 261, terminology, "impracticability," occurs when "a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made." If performance is impossible or impracticable a promisee's "duty to render performance is discharged, unless language or the circumstances indicate to the contrary." Id.
Nevertheless, this Court has not recognized the defense of impossibility or impracticability. "Where one by his contract undertakes an obligation which is absolute, he is required to perform within the terms of the contract or answer in damages, despite an act of God, unexpected difficulty, or hardship, because these contingencies could have been provided against by his contract." Alpine Construction Co. v. Water Works Board ofthe City of Birmingham, 377 So.2d 954 (Ala. 1979); PoughkeepsieSavings Bank v. Highland Terrace Apartments, 352 So.2d 1108
(Ala. 1977); contra, Jewell v. Jackson Whitsitt Cotton Co.,294 Ala. 112, 313 So.2d 157 (1975). Although the rule may have its exceptions, they are not applicable in the present case.See Code 1975, § 7-2-615; Poughkeepsie Savings Bank v. HighlandTerrace Apartments, 352 So.2d 1108 (Ala. 1977). Even if this Court were to recognize such a defense, the Silvermans would not be excused from their duty to perform. The Silvermans introduced no evidence showing that the *Page 895 
changed plan prevented their performance. They do not contend that the new plan resulted in higher development costs or reduced the value of their property. In sum, the Silvermans show no hardship which would prevent their performance of the contract.
The Silvermans also assert that by insisting on a "substantially different" lotting plan, in essence, Charmac breached the contract, thus excusing the Silvermans' performance. See Denver-Albuquerque Motor Transport, Inc. v.Green, 57 Ala. App. 709, 331 So.2d 719 (1976). Whether a party has substantially performed a promise under a contract is a question of fact. Bruner v. Hines, 295 Ala. 111, 324 So.2d 265
(1975). The trial court found that Charmac substantially performed its obligations and thus the Silvermans received substantially what they bargained for. The appellants bargained to retain "6 acres, more or less" of the ten acres they originally purchased. The Silvermans now have approximately six acres of developed land. The Silvermans introduced no evidence to show that the cost of developing under the new plan was greater than the cost of developing under the original plan. The Silvermans do not contend that the value of their property has been reduced by the new development plan.
The only changes alleged by the appellants are the reduction in lot sizes, the addition of Forest Grove Drive, and a change in the frontage of some of the lots. The trial court found that the Silvermans, at least impliedly, agreed to these changes. A written contract may be modified by a subsequent oral agreement. Winegardner v. Burns, 361 So.2d 1054 (Ala. 1978). Furthermore, a party's waiver of contractual provisions may be implied from the acts and circumstances surrounding the performance of the contract. Industrial Machinery, Inc. v.Creative Displays, 344 So.2d 743 (Ala. 1977).
There was ample evidence at the trial to support the judgment of the trial judge. The facts indicate that at the very least, the Silvermans waived the right to object to a new development plan. There was testimony at trial, denied by Mr. Silverman, that he urged his fellow stockholders to adopt the new plan. In 1976, the parties employed an analyst and a land planner to study the subdivision. The planner recommended the change in the lot sizes. Silverman was present at the meetings discussing these changes and failed to object. It was not until Silverman left the parties' common employer, and after the revised plan was accepted and the land rezoned, that Silverman first refused to pay construction costs. Under these circumstances, it is not erroneous to hold that the Silvermans must contribute their agreed upon pro rata share of the development costs.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and SHORES, EMBRY and ADAMS, JJ., concur.