THOMPSON, Presiding Judge.
Quinzetia Thomas appeals from a summary judgment entered by the Jefferson Circuit Court ("the trial court") in favor of Safeway Insurance Company of Alabama, Inc. ("Safeway"). Thomas had filed a civil action against Safeway alleging claims of breach of contract and bad faith.
The material facts in this case are not in dispute. The evidentiary submissions in favor of and in opposition to Safeway's motion for a summary judgment indicate the following. Thomas was in an automobile accident on November 11, 2013, when a vehicle driven by Erica Square struck Thomas's vehicle.[1] Thomas was injured in *967 the accident and required medical treatment. At the time of the accident, Thomas had an automobile insurance policy ("the policy") with Safeway that included "medical payments" ("med pay") benefits of up to $2,000. Pursuant to the policy, Safeway would pay Thomas up to $2,000 for "reasonable expenses incurred for necessary medical and funeral expenses" to treat injuries sustained in an automobile accident and
"which is in excess of any medical and/or funeral expenses actually paid or which would be payable to or on behalf of [Thomas] under any provision of any:
"a. automobile or premises insurance affording benefits for medical expenses;
"b. individual, blanket or group accident, disability or hospitalization insurance; or
"c. medical or surgical insurance or reimbursement plans."
In his affidavit, Richard Mizell, the claims manager for Safeway, testified that Thomas notified Safeway of the accident on November 12, 2013, and that on November 19, 2013, Safeway faxed a "proof of loss and medical authorization" form ("the proof-of-loss/medical-authorization form") to Thomas through her attorney. A letter accompanying the proof-of-loss/medical-authorization form asked that Thomas return the form, signed and notarized, along with copies of any medical bills and prescriptions and proof of related expenses. In his affidavit, Mizell explained the importance of obtaining Thomas's signature on the proof-of-loss/medical-authorization form. Saying the signed form was "vital" to Safeway, Mizell said:
"The proof of loss form contained the medical authorization and trust agreement for [Thomas] to sign. Without it, Safeway could not obtain medical bills to confirm whether Safeway was excess to other insurers, including medical insurance providers. Further [Thomas's] policy required her to sign the proof of loss/medical authorization to preserve Safeway's subrogation and reimbursement rights."
A second proof-of-loss/medical-authorization form was faxed to Thomas on December 9, 2013. Mizell said that on February 13, 2014, and again on May 16, 2014, Safeway contacted Thomas to ask her whether she intended to file a claim under her med-pay coverage. On May 23, 2014, Thomas informed Safeway that she would be making such a claim but that she did not have all of her documentation yet.
On August 27, 2014, Lindsay Hardaway, a claims adjuster for Safeway, sent Thomas a letter with yet another proof-of-loss/medical-authorization form. In the letter, Hardaway informed Thomas that Safeway still had not received a completed proof-of-loss/medical-authorization form. She asked that Thomas "sign and mail this form back to this office along with any related medical bills for us to consider that were not covered by any group, health, or other coverage." The letter also said that Safeway could not consider any payment until the proof-of-loss/medical-authorization form was completed and returned.
On September 30, 2014, Thomas informed Safeway that she would be sending documentation to support the med-pay claim. Mizell said that, at that time, Safeway again told Thomas that she needed to sign the proof-of-loss/medical-authorization form. Mark Erdberg, Thomas's attorney, stated in his affidavit that, on March 11, 2015, he contacted Hardaway and told her he "was not comfortable with some of the language in the [proof-of-loss/medical-authorization form] that they require[d] to be *968 signed." Specifically, Erdberg was not comfortable with language in the sworn-statement portion of the form. That statement provides:
"To the extent of the payment made or advanced under this policy, the insured hereby assigns, transfers and sets over to the insurance company all rights, claims or interests that he/she has against any person, firm or corporation liable for the medical or funeral services for which payment is made or advanced. He/she also hereby authorizes the insurance company to sue any such third party in his/her name. It is further understood that the said company, their duly authorized agent or attorney in that behalf, shall have the authority to endorse releases and drafts, and receipt for all monies in any manner, occurring to any benefit, from or out of the said subrogation.
"The Insured or Covered Person hereby warrants that no release has been given or will be given or settlement or compromise made or agreed upon with any third party or insurer who may be liable to the insured with respect to the claim being made herein.
"That the Insured or Covered Person warrants that said loss or damage did not originate by any act, design or procurement on my part nor in consequence with any fraud or evil practice done or suffered by me and that the above stated informat[io]n is true and correct in all regards and is material to any rights under the policy.
"MEDICAL
"By this Sworn Proof of Loss the undersigned hereby authorizes and gives permission to Safeway Insurance Company to obtain any and all medical information concerning the undersigned and hereby request any and all doctors, hospitals, and medical providers to furnish said Company any and all medical information requested by said Company.
"It is expressly understood and agreed that the furnishing of this blank or the preparation of proof by a representative of the above insurance company is not a waiver of any of its rights."
Erdberg asked Hardaway whether there was anything in Thomas's policy that required the proof-of-loss/medical-authorization form to be signed. He said that Hardaway told him she would look into the matter. On April 7, 2015, after another telephone conversation between Hardaway and Erdberg, Hardaway faxed a portion of the policy to Erdberg. In his affidavit, Erdberg said that he still disagreed that the policy required Thomas to sign the proof-of-loss/medical-authorization form. We note that neither Thomas nor Erdberg indicated in the record the specific language in the policy that was under discussion at that time. Erdberg said in his affidavit that Hardaway told him not to worry about signing the proof-of-loss/medical-authorization form but to complete it and return it to her. After the conversation, Thomas faxed a copy of the proof-of-loss/medical-authorization form to Safeway; however, only one page of the form was completed and it was not signed.
On July 6, 2015, Erdberg said, Thomas still had not received a payment from Safeway for her med-pay claim. He spoke to Hardaway again, and, he said, she pointed out to him that the med-pay coverage was secondary to health insurance. Erdberg advised that the amount Safeway owed Thomas was $530.52, and, he said, he faxed the records supporting the med-pay claim to Hardaway again. Although Erdberg's affidavit indicates that the records were attached as an exhibit, the record on appeal contains only a fax cover letter referring to "the attached," but there are no records attached.
On August 18, 2015, Erdberg said, he spoke to Safeway employee Bart Copeland, *969 who asked that Thomas's records be forwarded to him. Copeland sent Erdberg an e-mail stating that Safeway did not have the signed second page of the proof-of-loss/medical-authorization form. He asked Erdberg to forward that page to him so that Safeway could conclude its investigation of the claim. A copy of a blank signature page was attached to the e-mail. Erdberg responded, saying that he was not comfortable with the language in the form, and asked Copeland if the policy explicitly required an insured to sign the proof-of-loss/medical-authorization form. Copeland sent Erdberg a portion of the policy and referred Erdberg to language stating:
"As soon as possible the Covered Person [, i.e., Thomas,] making a claim under this coverage shall give us written proof of intent to present a claim under this Part, and to provide us a proof of loss, including full details of the injuries and treatment, other medical, hospital, workman's compensation insurance available, and any other information we may need to determine the amounts payable. The Covered Person shall submit to reasonable questioning concerning any claim made under this policy.
"The Covered Person shall submit to physical examination by doctors chosen by us at the time we select and as often as we may reasonably require. The Covered Person shall also give us an authorization which would allow us to obtain medical reports and copies of the records.
"....
"TRUST AGREEMENT
"When we pay medical expenses, the Covered Person or legal representative must agree in writing to repay us out of any damages recovered from anyone responsible for causing the bodily injury. The Covered Person must also agree in writing to hold in trust and preserve for us any rights to recover against anyone."
(Bold typeface in original.) Thomas did not provide Safeway with a signed proof-of-loss/medical-authorization form.
On November 12, 2015, Erdberg said, a settlement was reached with Square. On December 9, 2015, Thomas signed the settlement agreement releasing Square from liability. Mizell stated in his affidavit that Safeway was not notified that Thomas planned to settle with Square until after the settlement was final. The settlement agreement and release "destroyed Safeway's subrogation rights," Mizell said.
Thomas filed this civil action against Safeway on May 9, 2016, asserting that Safeway had breached the policy in bad faith. As of the date Mizell signed his affidavit, November 1, 2016, Safeway still had not denied Thomas's med-pay claim, Mizell said.
After hearing arguments from the parties, the trial court entered a summary judgment in favor of Safeway on December 11, 2016. In the judgment, the trial court determined that Safeway had not breached the policy "because Safeway never denied the claim nor refused to pay. It merely requested from ... Thomas, but did not receive, forms and documents essential to its evaluation of coverage. Because [Thomas] did not satisfy conditions precedent to coverage, Safeway did not constructively deny her claim." The trial court specifically found that Thomas's failure to submit the signed proof-of-loss/medical-authorization form violated a condition precedent to her coverage under the policy. It also found that her refusal to submit medical bills showing payments by other insurers also violated a condition precedent and precluded Thomas from any recovery from Safeway. It specifically found that Thomas's lack of cooperation in timely signing the proof-of-loss/medical-authorization *970 form and in reaching a settlement with Square "destroyed" Safeway's subrogation rights, precluding Thomas's coverage under the policy. Finally, the trial court found that Safeway never explicitly or constructively denied the med-pay claim and that it had a lawful basis to defer payment based on Thomas's failure to meet the conditions precedent to receive payment under the policy. Accordingly, the trial court found that Thomas could not demonstrate the elements to sustain a bad-faith claim.
Thomas appealed the summary judgment to the Alabama Supreme Court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.
" 'The standard of review applicable to a summary judgment is the same as the standard for granting the motion....' McClendon v. Mountain Top Indoor Flea Market, Inc., 601 So.2d 957, 958 (Ala. 1992).
" 'A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The burden is on the moving party to make a prima facie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that burden, the court is to view the evidence in a light most favorable to the nonmoving party and to draw all reasonable inferences in favor of that party. To defeat a properly supported summary judgment motion, the nonmoving party must present "substantial evidence" creating a genuine issue of material fact-"evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." Ala. Code 1975, § 12-21-12 ; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).'
" Capital Alliance Ins. Co. v. Thorough-Clean, Inc., 639 So.2d 1349, 1350 (Ala. 1994). Questions of law are reviewed de novo. Alabama Republican Party v. McGinley, 893 So.2d 337, 342 (Ala. 2004)."
Pritchett v. ICN Med. Alliance, Inc., 938 So.2d 933, 935 (Ala. 2006).
As the trial court wrote in its judgment:
"This case turns on whether [Thomas's] policy required her to (1) submit medical bills showing whether or not she received payment from other insurance; (2) sign and submit the proof of loss[/medical authorization] form to Safeway; and (3) notify Safeway of any potential settlement discussions with the underlying tortfeasor[, Square]. If [Thomas's] policy required her to do any one of the three requirements, [Thomas] cannot recover from Safeway for breach of contract or bad faith."
As noted, the trial court found that Thomas had failed to meet any of the three conditions. On appeal, Thomas asserts that none of those bases justify the trial court's decision to enter the summary judgment.
First, Thomas contends that the trial court's finding that Thomas refused to submit medical bills showing payments by other insurers is not supported by the record. She contends that, although Safeway had every right to request documentation that her unpaid medical bills totaled $530.52, it never requested such information. Thomas states that Safeway told her that her med-pay claim would not be paid because she had not submitted a signed proof-of-loss/medical-authorization form. Therefore, Thomas says, it cannot now claim that her failure to provide documentation to support her med-pay claim barred her recovery.
*971 We do not find Thomas's argument persuasive. To ensure that a claim is paid, Thomas's policy requires her to comply with its terms. In the portion of the policy that sets forth the insured's duties, the conditions precedent and duties of the insured that must be met before the insured can take legal action against Safeway are set forth as follows:
"A person seeking coverage under this policy must comply fully with all the terms of this policy before any obligation for payment arises, and there can be no action taken against us without and until compliance with all conditions and terms of this policy by the person(s) seeking coverage hereunder. No legal action may be brought against us until there has been full compliance with all the terms of this policy.... ''
Furthermore, as the trial court pointed out in its judgment, the general-duties section of the policy specifically requires that Thomas (1) provide Safeway with all information it requests; (2) fill out all proof-of-loss forms and other forms Safeway requires; (3) provide and execute authorization forms for the release of medical records; and (4) make a complete and accurate disclosure to Safeway of all information it requests. Additionally, the judgment noted the language, set forth above, requiring Thomas to give Safeway a medical authorization.
It is well settled that
"an insured must comply with his or her post-loss obligations when the insured is making a claim upon the insurer, and meeting those obligations is a precondition to any duty on the part of the insurer to make a loss payment. See [Nationwide Ins. Co. v.] Nilsen, [745 So.2d 264 (Ala. 1998) ] ; Akpan v. Farmers Ins. Exch., Inc., 961 So.2d 865, 872 (Ala. Civ. App. 2007). '[T]he obligation to pay or to evaluate the validity of the claim does not arise until the insured has complied with the terms of the contract with respect to submitting claims.' United Ins. Co. of America v. Cope, 630 So.2d 407, 411 (Ala. 1993). '[N]o case from this Court places on an insurance company an obligation to either investigate or pay a claim until the insured has complied with all of the terms of the contract with respect to submitting claims for payment.' 630 So.2d at 412 ; see also Reeves v. State Farm Fire & Cas. Co., 539 So.2d 252, 254 (Ala. 1989) ('Our cases have consistently held ... that the failure of an insured to comply within a reasonable time with such conditions precedent in an insurance policy requiring the insured to give notice of an accident or occurrence releases the insurer from obligations imposed by the insurance contract.')."
Baldwin Mut. Ins. Co. v. Adair, 181 So.3d 1033, 1045 (Ala. 2014).
Thomas does not dispute that she did not provide Safeway with a signed proof-of-loss/medical-authorization form and other proper documentation to support her claim under the med-pay provision of the policy. Furthermore, in addition to the explicit terms of the policy, the record contains a number of instances in which Safeway, by letter or in conversations between Safeway employees and Thomas and/or her attorney, asked Thomas to provide it with the necessary documentation to support her claim for payment. As Safeway points out, Thomas refused to sign the proof-of-loss/medical-authorization form that would have allowed Safeway itself to obtain the necessary medical records to investigate and pay her claim. After reviewing the record before us, we disagree with Thomas's assertion that the record does not support the trial court's finding that Thomas failed to provide the necessary documentation to support her claim. The record does not support Thomas's contention that "the record is void" of any request for documentation demonstrating *972 the amount of medical bills for which Thomas would be responsible after other types of insurance coverage was exhausted. Thus, because Thomas failed to meet her obligations and duties under the policy, Safeway did not have an obligation to pay the claim.
Relying on the doctrine of anticipatory breach, Thomas also argues that she was not required to present documentation to support her med-pay claim. Our review of the record shows that Thomas did not make this argument before the trial court. In her reply brief to this court, Thomas contends that, in her brief to the trial court in opposition to the motion for a summary judgment, she stated:
"As indicated above, though, Safeway did not request this [collateral-source] information, and in fact had explicitly told [Thomas] the two reasons for their failure to pay the medical payments benefits, neither of which included the lack of this information."
She states that "[t]his argument is essentially the equivalent of the argument of anticipatory breach." Our supreme court explained the elements of an anticipatory breach in Shirley v. Lin, 548 So.2d 1329, 1334 (Ala. 1989), writing:
"The following rules concerning anticipatory breach, or repudiation of a contract have been recognized in Alabama:
" 'To amount to a renunciation, ... the evidence must show words or acts evincing an intention to refuse performance within the future time allowed by the contract.
" '... "Merely because a given act or course of conduct of one party to a contract is inconsistent with the contract is not sufficient; it must be inconsistent with the intention to be ... bound by it."
" '....
" ' "Repudiation, among other things, means rejection, disclaimer, renunciation, or even abandonment." ...
" 'Some authorities state that the repudiation by one party "must at least amount to an unqualified refusal, or declaration of inability, substantially to perform according to the terms of his obligation.'' '
" Draughon's Business College v. Battles, 35 Ala.App. 587, 590, 50 So.2d 788, 790 (1951) (emphasis added) (citations omitted). Once a party to a contract repudiates the agreement, the other party is excused from further performance. Denver-Albuquerque Motor Transport, Inc. v. Green, 57 Ala.App. 709, 712, 331 So.2d 719, 722 (1976) ; Mid-State Homes, Inc. v. Brown, 47 Ala.App. 468, 473, 256 So.2d 894, 898 (1971)."
After reviewing the above requirements needed for a finding of an anticipatory breach, we conclude that the basis for Thomas's argument as to this issue is not apparent from the paragraph Thomas quoted from her brief in opposition to the motion for a summary judgment. That language is certainly insufficient to put the trial court on notice that Thomas was advancing the legal theory of anticipatory breach. There is no requirement that a trial court must guess all of the possible legal arguments a party can make from a given set of facts. We do not agree with Thomas that she advanced the argument of anticipatory breach before the trial court.
"[T]he trial court cannot be reversed on any ground or argument not presented for or against the motion [for a summary judgment]." Ex parte Ryals, 773 So.2d 1011, 1013 (Ala. 2000). "It is well settled that an appellate court may not hold a trial court in error in regard to theories or issues not presented to that court." Allsopp v. Bolding, 86 So.3d 952, 962 (Ala. 2011). Because Thomas did not present the *973 theory of anticipatory breach to the trial court, we will not reverse the judgment on that ground.
Thomas also argues that her refusal to sign the proof-of-loss/medical-authorization form is not a valid basis for the trial court's determination that she failed to meet the conditions precedent to payment of her benefits under the policy. She claims she was not obligated to sign the proof-of-loss/medical-authorization form because, she says, the first sentence of the sworn-statement portion of the form would have required her to assign and transfer to Safeway some of her rights against Square, the driver of the other automobile involved in the accident resulting in Thomas's claim. Such an assignment, Thomas asserts, was not required by the terms of the policy itself, which required only subrogation of her rights. Therefore, she said, the language of the sworn statement "materially differed" from the policy, to her detriment.
The sentence to which Thomas takes exception reads:
"To the extent of the payment made or advanced under this policy, the [insured] hereby assigns, transfers and sets over to the insurance company all rights, claims or interests that he/she has against any person, firm or corporation liable for the medical or funeral services for which payment is made or advanced."
In her appellate brief, Thomas asserts that, under Broadnax v. Griswold, 17 So.3d 656, 659-60 (Ala. Civ. App. 2008), "where there is a right of subrogation, an insured maintains the right of recovery, but that recovery is subject to the right of subrogation. However, where there is an assignment the insured loses the right of recovery and does not have standing to bring a lawsuit against the insured [sic]." (It appears that Thomas meant that, if she signed the proof-of-loss/medical-authorization form, she would not have standing to bring a lawsuit against the tortfeasor, Square.)
In its judgment, the trial court correctly and succinctly distinguished Broadnax from the instant case, writing:
"[Thomas's] argument that she was not required to sign the form because it would amount to an assignment of her rights is inapposite. She cited to Broadnax v. Griswold, wherein the Alabama Court of Civil Appeals discussed the difference between an assignment and subrogation. 17 So.3d 656. The language in question in Broadnax provided in part that, 'If any person to or for whom we make payment ... has rights of recovery from another, those rights are transferred to us.' Id. at 658. There are no qualifiers to this language. The Safeway proof of loss form, however, is qualified by phrases such as 'to the extent of the payment made or advanced under this policy,' 'the insured hereby assigns, transfers and sets over ... all rights claims or interests that he/she has against any ... liable for the medical or funeral services for which payment is made or advanced.' (Emphasis added.) The Safeway proof of loss form therefore only requires Ms. Thomas to protect Safeway's subrogation interest to the extent that Safeway makes payment to her for 'medical expenses.' It does not amount to a transfer or waiver of all of her rights under the policy to pursue the tortfeasor."
(Footnote omitted.)
We agree with the trial court's reading of Broadnax and conclude that the language of which Thomas complains in the sworn statement of the proof-of-loss/medical-authorization form did not require her to assign her claim against the tortfeasor, Square, to Safeway. Thus, Thomas had no valid or legitimate reason to refuse to sign the proof-of-loss/medical-authorization *974 form. The evidence is undisputed that Safeway requested numerous times over two years that Thomas submit a completed and executed proof-of-loss/medical-authorization form and sent her several copies of the form so that she could comply. By refusing to sign that form as directed, Thomas failed to comply with the duties she had under the terms of the policy. Accordingly, Safeway had no obligation to pay Thomas's claim. Adair, supra.
Because we have determined that Thomas failed to comply with at least two of her duties under the terms of the policy, thereby failing to initiate Safeway's obligation to pay the claim, we need not address her argument that, by reaching a settlement with and releasing the tortfeasor, Square, she did not bar her claim for med-pay benefits.
Finally, Thomas argues that the trial court erred in entering a summary judgment in favor of Safeway on her bad-faith claim. However, in her brief on appeal, she also recognizes that, if this court affirms the judgment as to the claim alleging breach of contract, the bad-faith claim cannot be sustained.
"The elements of a cause of action for a bad-faith refusal to pay an insurance claim were set out in National Security Fire & Casualty Co. v. Bowen, 417 So.2d 179 (Ala. 1982) :
" '[T]he plaintiff in a "bad faith refusal" case has the burden of proving:
" '(a) an insurance contract between the parties and a breach thereof by the defendant;
" '(b) an intentional refusal to pay the insured's claim;
" '(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
" '(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
" '(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
" 'In short, plaintiff must go beyond a mere showing of nonpayment and prove a bad faith nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim.'
" Id. at 183 (first emphasis added). See also Chavers v. National Sec. Fire & Cas. Co., 405 So.2d 1 (Ala. 1981). Thus, a breach of the insurance contract is an element of a bad-faith-refusal-to-pay claim."
Ex parte Alfa Mut. Ins. Co., 799 So.2d 957, 962 (Ala. 2001).
As discussed, because Thomas did not comply with all of the terms of her policy with respect to submitting her claim for med-pay benefits, Safeway did not have an obligation or duty to pay that claim. Adair, supra. Because Safeway had a reasonably legitimate reason not to pay the claim for med-pay benefits, Thomas's claim alleging bad faith cannot be sustained.
Thomas has failed to demonstrate that the trial court erred in entering the summary judgment in favor of Safeway. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
Pittman, Thomas, Moore, and Donaldson, JJ., concur.

Several documents submitted to the trial court indicate that the accident occurred on November 12, 2013. However, the Alabama Uniform Traffic Accident Report completed at the time of the accident shows that it happened on November 11, 2013.